MYERS, J.,
for the Court:
¶ 1. Steve Winters was convicted of aggravated assault by the Circuit Court of Coahoma County. He was sentenced to fifteen years in the custody of the Mississippi Department of Corrections. Aggrieved, Winters now appeals his conviction. The issues presented are taken verbatim from the brief of the appellant:
I. WHETHER THE STATE PROVED BEYOND A REASONABLE DOUBT THAT THE DEFENDANT WAS NOT ACTING IN NECESSARY SELF-DEFENSE.
II. WHETHER DOUBLE JEOPARDY ATTACHES TO BEING PROSECUTED WHEN THE CASE WAS DISMISSED BY THE JUSTICE COURT AND WHETHER THE STATUTE OF LIMITATIONS RAN PRIOR TO THE COMMENCEMENT OF THE CASE AGAINST THE DEFENDANT AND THE STATE IS BARRED BY LACHES FOR ITS DELAY IN TRYING THIS CASE.
III. WHETHER THE JURY WAS PROPERLY INSTRUCTED ON SELF-DEFENSE AND, IF NOT, WHETHER SUCH FAILURE CONSTITUTES REVERSIBLE ERROR.
IV. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING MOTIONS FOR DIRECTED VERDICT, JUDGMENT NOTWITHSTANDING THE VERDICT, JUDGMENT OF ACQUITTAL AND FOR A NEW TRIAL.
Finding no error, we affirm.
FACTS
¶ 2. There are few undisputed facts in this case. It is undisputed that an altercation between Winters and Jerry Cole took place in late evening hours of May 21, 1994. It is also undisputed that the fracas ended when Winters shot Cole in the chest with a .22 caliber pistol. The evidence presented at trial gave two versions of the circumstances surrounding these undisputed facts.
¶ 3. The prosecution offered the testimony of three witnesses, other than Cole, who were present when the incident in question took place. The testimonies of these witnesses tended to show that Cole and others were inside the apartment of Anita Ross, drinMng and playing cards, when Winters knocked on the door. From there, a heated verbal exchange commenced between Winters and Cole. This verbal exchange evolved into a fisticuffs. Cole and the other three eyewitnesses for the prosecution testified that Winters was on top of Cole when the shot was fired. Each of them also testified that Cole was not in possession of a weapon during the fight, and that no crutches were present at the scene. At the close of the State’s case, Winters moved for a directed verdict, which was denied.
¶ 4. The defense offered a quite different version of the circumstances surrounding the shooting. Four witnesses, including Winters, testified in rebuttal to the State’s case. Testimony was offered to show that Cole was the initial aggressor in the fight and that Winters was walMng with the aid of crutches when the fight took place. The defense also asserted that it was only when Cole stabbed Winters with an ice *310 pick that Winters pulled out the gun and shot Cole. Two eyewitnesses for the defense testified that Cole was on top of Winters when Winters fired the shot.
DISCUSSION
¶ 5. Because issues I and IV are so closely intertwined, we will address them together.
I. WHETHER THE STATE PROVED BEYOND A REASONABLE DOUBT THAT THE DEFENDANT WAS NOT ACTING IN NECESSARY SELF-DEFENSE.
IV. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING MOTIONS FOR DIRECTED VERDICT, JUDGMENT NOTWITHSTANDING THE VERDICT, JUDGMENT OF ACQUITTAL AND FOR A NEW TRIAL.
STANDARD OF REVIEW
¶ 6. Our standard for reviewing challenges to convictions based on sufficiency of the evidence is well established. As to each element of the offense, we consider all of the evidence in the light most favorable to the verdict. McClain v. State, 625 So.2d 774, 778 (Miss.1993). We reverse when, with respect to an element of the offense charged, the evidence is such that reasonable and fair-minded jurors could only find the accused not guilty. Id. As to whether the verdict is contrary to the overwhelming weight of the evidence, a similar standard is employed. Id. We view the evidence in the light most favorable to the verdict. Id. The trial court is given discretion to order a new trial in the face of overwhelming evidence contrary to the jury’s verdict in order to prevent an unconscionable injustice. Id. at 781. This standard is also applied when reviewing denial of a motion for directed verdict, a motion for a new trial or a motion for acquittal or new trial. Coleman v. State, 697 So.2d 777, 787 (Miss.1997). “In fact, evidence favorable to the defendant is disregarded during the consideration of whether to grant a motion for a directed verdict.” Yates v. State, 685 So.2d 715, 718 (Miss.1996) (citations omitted).
ANALYSIS
¶ 7. As set forth above, both sides presented very different versions of the events surrounding the altercation between Winters and Cole. In employing the proper standard for ruling on a motion for directed verdict, the trial judge was obligated to disregard all evidence favorable to the defendant. Yates, 685 So.2d at 718. The trial judge was therefore bound to accept as true all evidence presented by the State. If all evidence presented by the State is considered to be true, the trial judge had no choice but to deny Winters’s motion for a directed verdict. The evidence presented factual disputes that were proper for a jury determination.
¶ 8. In reviewing the jury’s decision, we must decide whether such decision could have been reached by “reasonable and fair-minded jurors.” McClain, 625 So.2d at 778. Again, the jury was presented with two completely different versions of what occurred. “Matters regarding the weight and credibility of the evidence are to be resolved by the jury.” Id. Because the verdict is supported by substantial evidence, we are not inclined to reverse.
II. WHETHER DOUBLE JEOPARDY ATTACHES TO BEING PROSECUTED WHEN THE CASE WAS DISMISSED BY THE JUSTICE COURT AND WHETHER THE STATUTE OF LIMITATIONS RAN PRIOR TO THE COMMENCEMENT OF THE CASE AGAINST THE DEFEN *311 DANT AND THE STATE IS BARRED BY LACHES FOR ITS DELAY IN TRYING THIS CASE.
¶ 9. At trial, counsel for the defense raised issues concerning double jeopardy and the statute of limitations for the crime charged. The trial judge found these issues to be without merit. The speedy trial issue is raised for the first time on appeal.

Double Jeopardy

¶ 10. During a meeting outside the presence of the jury, counsel for the defense informed the judge that he had double jeopardy concerns because his client “went into the justice court, and I understand that the proceedings were started there, and the case was dismissed, so that would raise double jeopardy issues here.” The trial judge informed defense counsel that even if a preliminary hearing had been held, double jeopardy had not attached. In the case of a jury trial, double jeopardy only attaches once a jury has been empaneled and sworn. Martin v. State, 766 So.2d 812, 814(¶ 8) (Miss.Ct.App.2000) (citing Jones v. State, 398 So.2d 1312, 1317 (Miss.1981)). In the case of a bench trial,' double jeopardy does not attach until the first witness is sworn. King v. State, 527 So.2d 641, 643 (Miss.1988) (citing United States v. Martin Linen Supply Co., 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977)). Nothing in the record indicates that a jury was empaneled and sworn or that a witness was sworn at the justice court level. Defense counsel made no further efforts to develop supporting evidence for this issue. This Court bases its decisions upon “facts shown in the record, not assertions in the brief, however sincere counsel may be in those assertions. Facts asserted to exist must and ought to be definitely proved and placed before us by a record, certified by law; otherwise, we cannot know them.” Roberts v. State, 761 So.2d 934, 935(¶3) (Miss.Ct.App.2000) (quoting Mason v. State, 440 So.2d 318, 319 (Miss.1983)). In reviewing the facts set forth in the record, we find that no double jeopardy problem exists.

Statute of Limitations

¶ 11. There is also no statute of limitations problem in the case at bar. Winters was charged with aggravated assault. The incident giving rise to the charge took place on May 22, 1994. At that time, there was a two year statute of limitations in effect for aggravated assault. Miss.Code Ann. § 99-1-5 (Rev.2000). This time limit runs from the date of commission of the crime until “the prosecution for such offense be commenced.” Id. “A prosecution may be commenced, within the meaning of Section 99-1-5 by the issuance of a warrant, or by binding over or recognizing the offender to compel his appearance to answer the offense, as well as by indictment or affidavit.” Miss.Code Ann. § 99-1-7 (Rev.2000). Winters was indicted on June 14, 1994, less than one month after the incident. Therefore, the prosecution was commenced within the time allowed by the statute.

Speedy Trial

¶ 12. As stated above, the incident giving rise to this case took place on May 22, 1994, and Winters was indicted on June 14, 1994. Capias was issued on June 15, 1994, and Winters was taken into custody on that same day. The record is unclear as to why the case was not tried following the return of this first capias. Nevertheless, a second capias was issued on August 10, 1996, Winters was again taken into custody, and preparations for trial were initiated. Winters contends that this delay in the proceedings denied him of his right to a speedy trial. Winters raises this issue for the first time on appeal.
*312 ¶ 13. The Mississippi Supreme Court has addressed this exact situation directly:
Defense counsel did not object or even mention the issue of speedy trial while the case was being tried. The first time this issue was raised was in the appellant’s rebuttal brief submitted almost a full year after the trial. This Court can only decide this issue if it views it as plain error under Supreme Court Rule 28(a)(3). As a rule, the Supreme Court only addresses issues on plain error review when the error of the trial court has impacted upon a fundamental right of the defendant. “It has been established that where fundamental rights are violated, procedural rules give way to prevent a miscarriage of justice.” Gray v. State, 549 So.2d 1316, 1321 (Miss.1989). Although the right to a speedy trial is a fundamental constitutional right, it is difficult to tell if this right has been violated in the case at bar. Under the test of Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), four factors must be considered before one can determine if the right to a speedy trial has been denied: (1) length of delay, (2) reason for the delay, (3) the defendant’s assertion of his right to a speedy trial, and (4) prejudice resulting to the defendant.
Sanders v. State, 678 So.2d 663, 670 (Miss.1996). The supreme court later stated that “[t]he weighing of the Barker factors is not a mechanistic weighing. We must look at the totality of the circumstances.” Herring v. State, 691 So.2d 948, 955 (Miss.1997). In Herring, the factors were evaluated one by one, with each being deemed to favor either the defendant or the State. Id. at 955-56. We will now follow this analysis in deciding whether Winters was denied his right to a speedy trial.
1. Length of Delay
¶ 14. The delay in this case was just over two years. The Herring court noted that:
a delay of eight months or longer is presumptively prejudicial. Spencer v. State, 592 So.2d 1382, 1387 (Miss.1991); Smith v. State, 550 So.2d 406 (Miss.1989). Where there is an extensive delay prior to trial, that delay “must be weighed heavily in favor of [the defendant] in the balancing test.” Flores v. State, 574 So.2d 1314, 1322 (Miss.1990). However, the delay should “not [be] conclusively weighted against the State”; the presumption of prejudicial delay may be rebutted when balanced by the remaining factors. Wiley v. State, 582 So.2d 1008, 1012 (Miss.1991).
Herring, 691 So.2d at 955. This factor therefore weighs in favor of Winters.
2. Reason for Delay
¶ 15. “We have held that ‘[o]nee we find the delay presumptively prejudicial, the burden shifts to the prosecutor to produce evidence justifying the delay and to persuade the trier of fact of the legitimacy of the reasons.’ ” Herring, 691 So.2d at 955-56 (quoting State v. Ferguson, 576 So.2d 1252, 1254 (Miss.1991)). In the present case, Winters did not raise a speedy trial issue at trial. The prosecutor was thus given no reason to present the trier of fact with evidence justifying the delay. Consequently, we will not place any weight upon this factor.
3.Defendant’s Assertion of His Right
¶ 16. As noted above, Winters did not assert his right to a speedy trial in the lower court.
“[T]he Barker Court held that:
[t]he defendant’s assertion of his speedy trial right, then is entitled to strong evidentiary weight in determining *313 whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial. Barker, 407 U.S. at 531-32, 92 S.Ct. at 2192-93.”
Herring, 691 So.2d 948, 956. This factor weighs heavily in favor of the State.
4. Prejudice to the Defendant
¶ 17. In Barker, it was stated that:
Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.
Barker v. Wingo, 407 U.S. at 532, 92 S.Ct. 2182. The first two protected interests are not applicable in this situation. However, Winters asserts that his defense was hindered by the delay. As the United States Supreme Court noted in Barker, typical undue hindrances caused by delay in prosecution are loss of witnesses due to death or disappearance and loss of memory as to the circumstances surrounding the charge. Id. Winters states that, at the time of the incident, he was on crutches and was feeble in stature while the victim was more robust, but that, at the time of trial, Winters himself had developed a more muscular build while the victim had diminished in size. This, he contends, was prejudicial to his defense because the jury did not see the men as they were during the altercation. However, Winters was allowed to testify before the jury as to his growth and the victim’s diminution. We do not find that this constitutes undue prejudice. This factor, therefore, weighs in favor of the State. This analysis of the Barker factors indicates that Winters was not denied his right to a speedy trial.
III. WHETHER THE JURY WAS PROPERLY INSTRUCTED ON SELF-DEFENSE AND, IF NOT, WHETHER SUCH FAILURE CONSTITUTES REVERSIBLE ERROR.
¶ 18. A review of the record reveals that Winters never objected to the jury instructions given by the trial court, even though he had ample opportunity to do such. This court has said:
“The Mississippi Supreme Court has consistently held that:
no assignment of error based on the giving of an instruction to the jury will be considered on appeal unless specific objection was made to the instruction in the trial court stating the particular ground or grounds for such objection .... a party may not argue that an instruction was erroneous for a reason other than the reason assigned on objection to the instruction at trial.
Walker v. State, 740 So.2d 873 (Miss.1999) (citations omitted). When a party objects to a particular jury instruction, he should “state a contemporaneous objection in specific terms so that the trial court has an opportunity to correct any mistake.” Young v. Robinson, 538 So.2d 781, 783 (Miss.1989) (citations omitted).
*314 Avera v. State, 761 So.2d 900, 905 (¶ 15) (Miss.Ct.App.2000). This issue is procedurally barred from review.
¶ 19. THE JUDGMENT OF THE COAHOMA COUNTY CIRCUIT COURT OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND TO PAY RESTITUTION IS AFFIRMED. SENTENCE TO RUN CONSECUTIVE TO ANY AND ALL PREVIOUS SENTENCES. ALL COSTS OF THIS APPEAL ARE TAXED TO COAHOMA COUNTY.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., PAYNE, BRIDGES, THOMAS, LEE, IRVING and CHANDLER, JJ., concur.