790 So.2d 888 (2001)
Oscar Dion FLEMING, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-KA-01757-COA.
Court of Appeals of Mississippi.
July 17, 2001.
*889 Edward C. Fenwick, Kosciusko, Attorney for Appellant.
*890 Office of the Attorney General by John R. Henry Jr, Jackson, Attorney for Appellee.
Before SOUTHWICK, P.J., THOMAS, and IRVING, JJ.
THOMAS, J., for the Court:
¶ 1. Oscar Dion Fleming was convicted for sale of cocaine and sentenced to twelve years in the custody of the Mississippi Department of Corrections. Aggrieved, Fleming asserts the following errors:
I. FLEMING WAS DENIED THE RIGHT TO A SPEEDY TRIAL.
II. FLEMING RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.
Finding no error, we affirm.

FACTS
¶ 2. On August 8, 1997, Officer Darren McAllister of the Mississippi Bureau of Narcotics arranged through a confidential informant to make a controlled buy of cocaine from Fleming at the Hannah Heights apartment complex in Kosciusko, Mississippi. Prior to meeting with Fleming, Officer McAllister observed the usual preliminaries of a controlled buy operation during which he was provided cash for the purchase and outfitted with a radio transmitting and recording device. When Officer McAllister arrived at the Hannah Heights apartments, Fleming entered his vehicle. After a conversation involving the price of the cocaine, a price was agreed upon and McAllister paid sixty dollars for a bag of crack cocaine. The contents of the cellophane bag were later examined by the Mississippi Crime Laboratory and found to contain several rocks of cocaine.
¶ 3. At trial, the prosecution provided the following as evidence: the testimony of Officer McAllister, the tape created while recording the controlled buy, the testimony of Officer Armon, who monitored the controlled buy, the testimony of Mississippi Crime Laboratory technician, Jason Alexis, and the cocaine itself. Fleming was found guilty of sale of cocaine, a schedule II controlled substance and received a sentence of twelve years in the custody of the Mississippi Department of Corrections.

ANALYSIS

I. WAS FLEMING DENIED THE RIGHT TO A SPEEDY TRIAL?
¶ 4. Fleming complains that he was denied the fundamental constitutional right to a speedy trial. Either due to a misunderstanding of the law or a deliberate attempt to manipulate this Court, Fleming confuses the difference between an assertion of the right to a speedy trial and a motion to dismiss for the lack of a speedy trial.
¶ 5. When a defendant fails to assert his right to a speedy trial but makes a motion to dismiss for the lack of a speedy trial, the failure to assert his right to a speedy trial is only one of four factors to be considered by the court in finding whether the right to a speedy trial was denied. Under the test of Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), four factors must be considered before one can determine if the right to a speedy trial has been denied: (1) length of delay, (2) reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) prejudice resulting to the defendant. Our supreme court, in its interpretation of Barker, has held "[t]he weighing of the Barker factors is not a mechanistic weighing. We must look at the totality of the circumstances." Winters v. State, No. 1998-KA-01451-COA, ___ So.2d ___, 2001 WL 316212 (Miss.Ct. App. Apr. 3, 2001) (citing Herring v. State, *891 691 So.2d 948, 955 (Miss.1997)). In Barker, the United States Supreme Court went on to explain:
We reject, therefore, the rule that a defendant who fails to demand a speedy trial forever waives his right. This does not mean, however, that the defendant has no responsibility to assert his right. We think the better rule is that the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right. Such a formulation avoids the rigidities of the demand-waiver rule and the resulting possible unfairness in its application. It allows the trial court to exercise a judicial discretion based on the circumstances, including due consideration of any applicable formal procedural rule. It would permit, for example, a court to attach a different weight to a situation in which the defendant knowingly fails to object from a situation in which his attorney acquiesces in long delay without adequately informing his client, or from a situation in which no counsel is appointed. It would also allow a court to weigh the frequency and force of the objections as opposed to attaching significant weight to a purely pro forma objection.
Barker v. Wingo, 407 U.S. at 528-9, 92 S.Ct. 2182. The United States Supreme Court continued to explain that:
Whether and how a defendant asserts his right is closely related to the other factors we have mentioned. The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.
Id. at 531-2. Our supreme court has accepted and applied this approach to such a situation where the defendant failed to assert his right to a speedy trial. Jaco v. State, 574 So.2d 625, 632 (Miss.1990); Smith v. State, 550 So.2d 406, 409 (Miss. 1989); Vickery v. State, 535 So.2d 1371, 1377 (Miss.1988). However, in every case where this approach has applied, including Vickery, the defendant made a motion to dismiss prior to, or during the lower court trial.
¶ 6. In the case at hand, the record shows no indication that Fleming ever made a motion to dismiss for the lack of a speedy trial. In fact, Fleming made no mention whatsoever of a speedy trial until this appeal. In order to assert that his charges should have been dismissed due to lack of a speedy trial, that motion had to be made prior to or at the threshold of the lower court trial proceeding. Otherwise, just like any other motion in a criminal case (i.e., a motion to suppress statements, evidence, etc.), failure to raise the issue prior to or during trial operates as a waiver of his right to do so. Gatlin v. State, 724 So.2d 359, 370 (Miss.1998). See also Foster v. State, 639 So.2d 1263, 1270 (Miss. 1994); Mitchell v. State, 609 So.2d 416, 422 (Miss.1992); Jones v. State, 606 So.2d 1051, 1058 (Miss.1992); Moawad v. State, 531 So.2d 632, 635 (Miss.1988); Howard v. State, 507 So.2d 58, 63 (Miss.1987).
¶ 7. Our supreme court has dealt with this situation before. Sanders v. State, 678 So.2d 663, 669 (Miss.1996). See also Winters v. State, No. 1998-01451-COA, ___ So.2d ___, 2001 WL 316212 (Miss.Ct. *892 App. Apr. 3, 2001). In Sanders, the court held that because the defense did not make an objection or even mention the issue of speedy trial while the case was being tried, the court could only decide this issue if it views it as plain error. "It has been established that where fundamental rights are violated, procedural rules give way to prevent a miscarriage of justice." Gray v. State, 549 So.2d 1316, 1321 (Miss.1989). "Fundamental rights in serious criminal cases rise above mere rules of procedure." House v. State, 445 So.2d 815, 820 (Miss.1984). See also Brooks v. State, 209 Miss. 150, 155, 46 So.2d 94, 97 (1950).
¶ 8. Therefore, we apply the Barker test to the case at hand in order to insure the lack of plain error in the trial court proceeding. The Mississippi Supreme Court defined "plain error" as error that affects the substantive rights of a defendant. Grubb v. State, 584 So.2d 786, 789 (Miss.1991). "The plain error doctrine has been construed to include anything that `seriously affects the fairness, integrity or public reputation of judicial proceedings.'" Porter v. State, 749 So.2d 250, 260-61 (¶ 36) (Miss.Ct.App.1999) (quoting United States v. Olano, 507 U.S. 725, 732-35, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). Our analysis, therefore, necessarily includes a determination of whether there is an error that is some deviation from a legal rule, whether that error is plain, clear or obvious, and whether the error is prejudicial in its effect upon the outcome of the trial court proceedings. Porter, 749 So.2d at 260-61 (¶ 36).
¶ 9. While there is no indication that Fleming suffered any plain error that seriously affected the fairness, integrity, or public reputation of judicial proceedings, we will apply the Barker test to the situation for the sake of legal precision.
¶ 10. The only prong of Barker that Fleming may have satisfied is that of length of delay. Four hundred twenty-two days passed between Fleming's arrest and his trial, a long enough delay to satisfy Barker. Nevertheless, Fleming does not fare as well in regard to the remaining three speedy trial prongs.
¶ 11. The next prong of the Barker test is reason for delay. With the exception of an order of continuance which was entered, the record is silent as to the reasons for the delay. Fleming is unable to show any evidence that the State caused the delay.
¶ 12. As stated before, Fleming never asserted his right to a speedy trial; therefore, this prong of the Barker test weighs heavily against him.
¶ 13. Finally, Fleming does not point to any evidence which would show how he was prejudiced. Rather, Fleming claims that he was prejudiced due to the fact that Officer McAllister, the chief witness for the prosecution, did not recall the details of the controlled buy. Fleming also claims that he himself could not recall the details of his own alibi. These claims are not persuasive.
¶ 14. After thorough consideration of the combination of these factors it is apparent to this court that Fleming's claim that he was denied his right to a speedy trial does not meet the standard of plain error. Therefore, we affirm.

II. WAS FLEMING DENIED EFFECTIVE ASSISTANCE OF COUNSEL?
¶ 15. Fleming's claim is addressed under a two-part test established in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and followed by the Mississippi Supreme Court in Stringer v. State, 454 So.2d 468, 476 (Miss.1984). A successful completion of this test is paramount to Fleming's argument. He must successfully meet both *893 prongs. Under Strickland and Stringer, Fleming must show that the counsel's performance was so deficient that it constituted prejudice. Strickland, 466 U.S. at 687, 104 S.Ct. 2052. The asserting party must also show that "but for his attorney's errors, there is a reasonable probability that he would have received a different result in the trial court." Rankin v. State, 636 So.2d 652, 656 (Miss.1994). The defendant bears the burden of demonstrating that both prongs have been met. Leatherwood v. State, 473 So.2d 964, 968 (Miss.1985).
¶ 16. Additionally, there is a strong but rebuttable presumption that an attorney's performance falls within a wide range of reasonable professional assistance and that the decisions made by trial counsel are strategic. Vielee v. State, 653 So.2d 920, 922 (Miss.1995). Application of the Strickland test is applied with deference to counsel's performance, considering the totality of the circumstances to determine whether counsel's actions were both deficient and prejudicial. Conner v. State, 684 So.2d 608, 610 (Miss.1996). The test is to be applied to the overall performance of the attorney. Strickland, 466 U.S. at 695, 104 S.Ct. 2052. With respect to the overall performance of the attorney, "counsel's choice of whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections fall within the ambit of trial strategy." Scott v. State, 742 So.2d 1190 (¶ 14) (Miss.Ct.App.1999); Cole v. State, 666 So.2d 767, 777 (Miss. 1995); Murray v. Maggio, 736 F.2d 279, 283 (5th Cir.1984). With this in mind, we now turn to Fleming's allegations of ineffectiveness.
¶ 17. Fleming asserts that because his trial court counsel did not capitalize on the prosecution's failure to enter the cocaine into evidence during its case in chief, he was denied effective assistance of counsel. After Fleming had presented his first witness, the prosecution was allowed to re-open and enter the cocaine as evidence. Whether and when the cocaine was entered into evidence makes no difference, because it was an exhibit that both Officer McAllister and Alexis not only identified, but discussed in detail during their testimony. Any objection by Fleming's trial counsel to the prosecution reopening and entering the cocaine as evidence after they had rested would have been a fruitless endeavor. Therefore, we affirm.
¶ 18. THE JUDGMENT OF THE ATTALA COUNTY CIRCUIT COURT OF CONVICTION OF THE SALE OF COCAINE, A SCHEDULE II CONTROLLED SUBSTANCE, AND SENTENCE OF TWELVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., PAYNE, BRIDGES, LEE, IRVING, MYERS and CHANDLER, JJ., CONCUR.