953 So.2d 241 (2005)
Jerry McGEE, Appellant
v.
STATE of Mississippi, Appellee.
No. 2003-KA-01686-COA.
Court of Appeals of Mississippi.
October 25, 2005.
Rehearing Denied February 7, 2006.
*242 Thomas W. Powell, attorney for appellant.
Office of the Attorney General by W. Daniel Hinchcliff, attorney for appellee.
Before LEE, P.J., GRIFFIS and ISHEE, JJ.
GRIFFIS, J., for the Court.
¶ 1. Jerry McGee was convicted of two counts of armed robbery. Hinds County Circuit Court Judge James E. Graves, Jr. sentenced McGee, as an habitual offender, to serve a life sentence without parole in the custody of the Mississippi Department *243 of Corrections. McGee filed a motion for a judgment notwithstanding the verdict or, in the alternative a new trial, which was denied.
¶ 2. On appeal, McGee asserts the following error: (1) ineffective assistance of trial counsel, (2) the trial court erred in denying motion to compel or to dismiss the indictment for prosecution's failure to produce exculpatory evidence, (3) the trial court erred in not declaring a mistrial after jury viewed a poorly redacted confession that contained other bad acts, which unduly prejudiced defendant, (4) the trial court erred in sentencing McGee as an habitual offender without conducting a hearing to determine McGee's status as an habitual offender, (5) the habitual offender sentence was contrary to the jury verdict and trial court's pronouncement of sentence, (6) the trial court erred in allowing the State to seek habitual offender sentencing, (7) McGee's state and federal rights to a speedy trial were violated, (8) the trial court erred in overruling McGee's Batson challenges and failed to require race and gender neutral reasons for peremptory challenges by the State, (9) the trial court failed to give jury instructions during the sentencing phase, and (10) the trial court failed to instruct the jury on an element of robbery. We find error due to the prosecutor's clear gender discrimination in jury selection. Accordingly, we reverse McGee's conviction and remand for a new trial.

FACTS
¶ 3. On January 4, 2000, McGee approached two women with an unloaded .12 gauge pistol grip shotgun, which was wrapped up in a yellow cloth. He demanded their money. The women testified they never saw the gun, but they could tell it was a gun under the yellow cloth. The women screamed and ran, and McGee grabbed one of their purses. A nearby security guard heard the screams and saw McGee running toward him with a purse. When the guard gave chase, McGee threw the purse at the guard. The guard tackled McGee, and the shotgun fell to the ground.
¶ 4. The guard was able to restrain McGee until police arrived. A Jackson police officer testified that he saw the shotgun on the ground with a yellow cloth wrapped around the handle. He retrieved the gun but left the yellow cloth. McGee signed a confession but denied that he ever exhibited the shotgun or pointed it at the victims.
¶ 5. McGee was indicted during the January 2000 term of the grand jury, but was never arraigned. On March 8, 2001, McGee wrote a letter to the trial court administrator requesting a speedy trial. McGee's trial began on September 6, 2001. A mistrial was declared because of a hung jury. The case went to trial a second time on September 24, 2001 resulting in a conviction.

ANALYSIS
I. Was there a violation of Batson v. Kentucky for race and gender discrimination?
¶ 6. We begin our review with the issue that causes us concern. McGee, who is African-American, argues the trial court should have granted his Batson challenge based on racial discrimination. On appeal, McGee also claims that the trial judge should have sua sponte raised the issue of gender discrimination. The State argues that there was no error in the denial of the challenge on the basis of race discrimination. The State also claims that McGee failed to object on the basis of gender discrimination, and McGee is now barred from raising gender discrimination on appeal. *244 Chase v. State, 645 So.2d 829, 843-44 (Miss.1994). Because we find there was impermissible gender discrimination, we do not reach the issue of racial discrimination.
¶ 7. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) is a landmark case in jury selection. Batson established a three-part test for a defendant to make out a prima facie case of purposeful discrimination in jury selection. The defendant must show:
(a) that he is a member of a cognizable racial group;
(b) that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race; and
(c) that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.
Id. at 96, 106 S.Ct. 1712. Once the defendant does so, the prosecutor is then required to provide a non-racial reason for exercising the challenge. The court may accept the reasons given and allow the challenge.
¶ 8. In J.E.B. v. Alabama, 511 U.S. 127, 141, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), Batson was extended to protect against gender discrimination. See Duplantis v. State, 644 So.2d 1235, 1246 (Miss.1994). Accordingly, the State may not keep a person off the jury simply because of that person's gender. J.E.B., 511 U.S. at 141, 114 S.Ct. 1419.
¶ 9. McGee raised a Batson challenge during voir dire. McGee alleged that the State was impermissibly striking African-American jurors. The court asked the prosecutor for race-neutral reasons, one-by-one, for all the African-Americans she struck:
Ms. Wooten: Your Honor, on panel number 5 juror number 4, Mr. Washington. I actually liked him. He has a college education, is well-educated except for the fact that his brother apparently was convicted in a drug trial in Madison County, and that did give me some concern. That was the reason I struck him.
The Court: But Ms. Deandrea's [another juror] mama was convicted of a drug crime in Hinds County. You didn't strike her.
Ms. Wooten: I agree, Your Honor.
The Court: Tell me the difference between her and a black man whose [brother was convicted].
Ms. Wooten: Well, Your Honor, it's difficult to take it on a juror by juror basis. I took these jurors as a whole. There weren't any specific things other than the way theylike I said with Mr. Washington, it concerned me that his brother was in Madison County.
The Court: But Ms. Deandrea's mama being convicted didn't concern you?
Ms. Wooten: And, Your Honor, the reason I don't like trying to do these Batson challenges piecemeal is because it's difficult because there are going to be jurors as we go along throughout this panel that I absolutely accept that are African-Americans that have relatives that have convictions. So it's difficult for me to explain in one case when
The Court: Right now all I'm asking you is explain why you weren't concerned about Ms. Deandrea's mother who has this conviction for a drug offense.
Ms. Wooten: Your Honor, that did concern me. The other reasonand it had nothing to do with Mr. Washington's *245 race, it's that he's a male. And I don't know if gender is discrimination or something, but Ms. Deandrea is a female, so between the two, a female or a male, I would rather have a female, you know, taking criminal convictions, if that family member have [sic] criminal convictions.

(emphasis added). The prosecutor gave gender as her race-neutral reason for striking a juror.
¶ 10. In its brief, the State makes no argument as to how or why this would not be a clear case of gender discrimination. The State provides an argument on why there was no impermissible race discrimination. However, as to gender discrimination, the State relies on Chase v. State to claim that McGee is barred from addressing this issue on appeal because he failed to object at trial on the basis of gender discrimination.
¶ 11. In Chase, the supreme court held that "[n]o objection was raised by Chase to the challenges based on gender and as a consequence that claim is procedurally barred." Chase, 645 So.2d at 842. The court concluded:
On the question of gender-based discrimination, Chase argues that no gender-neutral explanations were offered for peremptory challenges against women. However, no objection was raised by the defense and no such explanation was requested. Chase concedes that the holding in Batson has not been applied to gender discrimination. The bigger problem is that Chase did not raise this issue at trial and allow the prosecutor an opportunity to respond or give the trial judge an opportunity to make a ruling or finding of fact. This failure alone insures that this issue cannot be the basis of reversal. Chase's claim of gender-based discrimination in jury selection is procedurally barred on appeal by our rule requiring contemporaneous objection as a prerequisite to preservation of the issue on appeal.
Alternatively considering this assignment on its merits, Chase also does not make a case for purposeful exclusion of women. The reasons given by the prosecutor for exercising the peremptory challenges on five of the women were not only race neutral, they were also gender neutral. Chase also used seven of his peremptory challenges, more than the prosecution, to exclude women from the jury. Despite the exclusion of women by both sides, the jury panel ultimately consisted of a majority of women. Chase's assignment fails not only for failure to preserve the issue, but also for failure of any supporting proof.
In addition to the other considerations, it should also be pointed out that the prosecutor only used a total of eight peremptory challenges. This considerably weakens any argument by Chase. If the prosecutor were intent on purposeful discrimination based on either race or gender, then the additional challenges could have been used to exclude blacks or women who ultimately served on the jury.
* * *
This assignment of error is without merit and procedurally barred, in part.
Id. at 843-44.
¶ 12. Interestingly, Chase was decided on February 24, 1994, and J.E.B. was decided on April 19, 1994. On October 27, 1994, the Mississippi Supreme Court recognized J.E.B. "extends Batson protection to gender." Duplantis, 644 So.2d at 1246. The significance, of course, is that Chase was decided before the United States Supreme Court extended the protections of Batson to gender. Hence, gender-based discrimination was not prohibited when *246 Chase was decided. Thus, the State's citation to Chase does not control our decision here.
¶ 13. Our courts have held that the failure of defense counsel to offer an objection, on the basis of Batson, may procedurally bar our consideration of that issue on appeal. Weeks v. State, 804 So.2d 980, 987 (¶ 11) (Miss.2001); Blue v. State, 674 So.2d 1184, 1212 (Miss.1996) (rev'd on other grounds). Nevertheless, in Foster v. State, 639 So.2d 1263, 1289 (Miss.1994), the court held that a "defendant who fails to make a contemporaneous objection must rely on plain error to raise the assignment on appeal." Our courts have allowed the review of errors that were not first brought to the attention of the trial court, where the error affected substantial rights of the defendant. Grubb v. State, 584 So.2d 786, 789 (Miss.1991); Mitchell v. State, 788 So.2d 853, 855 (¶ 9) (Miss.Ct. App.2001). The plain error doctrine includes the review of errors that "seriously affect[ ] the fairness, integrity or public reputation of judicial proceedings." United States v. Olano, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).
¶ 14. The plain error doctrine guides our decision here. The prosecutor's race-neutral reason for striking a juror was a blatant admission of gender discrimination. In the prosecutor's words:
The other reasonand it had nothing to do with Mr. Washington's race, it's that he's a male. And I don't know if gender is discrimination or something, but Ms. Deandrea is a female, so between the two, a female or a male, I would rather have a female, you know, taking criminal convictions, if that family member have [sic] criminal convictions.

(emphasis added). Clearly, the State's preemptory challenges evidence gender discrimination.
¶ 15. When finding a violation under Batson, we often remand for a Batson hearing. Manning v. State, 735 So.2d 323, 341 (¶ 34) (Miss.1999). Since we do not consider the question of discrimination disguised by pretext, there is no need to remand for further hearing on the Batson violation. Id. The State admitted to gender discrimination in open court. This casts doubt on the integrity of the entire process, and we find that it deprived McGee of a fair trial. Accordingly, we reverse and remand this case for a new trial.
¶ 16. As a result of our decision, many of the remaining issues are now moot, and we will not address the issues that may request resentencing or a new trial. We now consider only those remaining issues that may require the indictment to be dismissed.
II. Should the trial court have compelled production of the yellow cloth or have dismissed the indictment for failure to preserve exculpatory evidence?
¶ 17. McGee also argues the State failed to preserve exculpatory evidence, the yellow cloth that was wrapped around the shotgun at the time of the robbery. McGee claims that if the cloth was such that the witnesses were not aware of nor afraid of the weapon, then he is only guilty of strong-arm robbery. Even though the cloth was wrapped around the handle of the shotgun when police discovered it, the cloth was left behind. The State counters that the exculpatory nature of the cloth was not apparent at the time and comparable evidence was available.
¶ 18. The State may be guilty of a due process violation when it fails to preserve exculpatory evidence. Arizona v. Youngblood, 488 U.S. 51, 57-58, 109 S.Ct. *247 333, 102 L.Ed.2d 281 (1988). To violate due process:
(1) the evidence . . . must possess an exculpatory value that was apparent before [it] was destroyed;
(2) the evidence must be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means; and
(3) the prosecution's destruction of the evidence must have been in bad faith.
State v. McGrone, 798 So.2d 519, 523 (¶ 11) (Miss.2001). Generally, a defendant must prove bad faith. Id. at (¶ 12). However, if the police or the State engage in a course of conduct which makes it impossible for a defendant to prove it, bad faith will be found. Id.
¶ 19. McGee does not argue that the police officer acted in bad faith when he left behind the yellow cloth. McGee has the obligation to prove bad faith unless the State made this proof impossible. For example, in McGrone, the defendant subpoenaed police officers to determine if they had destroyed or lost exculpatory evidence in bad faith. Id. Each officer failed to obey the subpoena. Id. The McGrone court held that "[t]he State may not, through the police officers' intentional actions, negate the only means the defendant has for proving a due process violation." Id.
¶ 20. The record here does not reveal a course of conduct on the part of the police or State which impeded McGee's ability to prove bad faith. In this case, the police officer who failed to retrieve the yellow cloth testified at trial. He testified he was unaware of the cloth's significance and had no ill motive in not securing it. Since there is no basis for a finding of bad faith, there is no need to continue our inquiry. We need not consider whether the cloth was exculpatory nor whether McGee had access to comparable evidence. We find that this issue has no merit and affirm the trial court on this issue.
III. Was McGee denied his right to a speedy trial?
¶ 21. McGee argues he was denied his state and federal rights to a speedy trial, because over 600 days elapsed between his arrest and trial. He claims prejudice in the delay because of the loss of a witness. The State counters that McGee caused the delay and was not prejudiced.
A. McGee's state right to a speedy trial
¶ 22. In Mississippi, criminal defendants must be tried within 270 days of arraignment, unless good cause is shown by the State. Miss.Code Ann. § 99-17-1 (Rev.2000). The problem presented here is that McGee was never arraigned. Explicit waiver of arraignment may also be used to trigger the state right. Felder v. State, 831 So.2d 562, 570 (¶ 22) (Miss.Ct. App.2002). Since McGee neither was arraigned, nor ever explicitly waived arraignment, the statute was never triggered. Perry v. State, 419 So.2d 194, 198 (Miss. 1982). Where the state right is not triggered, it is not violated. Id. McGee was not denied his state right to a speedy trial.
B. McGee's federal right to a speedy trial
¶ 23. McGee's federal right to a speedy trial is guaranteed by the Sixth Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment. Barker v. Wingo, 407 U.S. 514, 515, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The federal right attaches when defendant is first accused, either through arrest, indictment, or information. Smith v. State, 550 So.2d 406, 408 *248 (Miss.1989). To assess a violation of the Sixth Amendment, this Court follows the federal test set out in Barker v. Wingo. Fleming v. State, 790 So.2d 888, 890 (¶ 5) (Miss.Ct.App.2001). The Court considers four factors: (1) the length of delay, (2) reasons for the delay, (3) whether defendant asserted his rights, and (4) prejudice to the defendant. Id.
1. Length of delay
¶ 24. First, we examine the length of the delay. Only if the delay is presumptively prejudicial, do we go on to the other Barker factors. Barker, 407 U.S. at 530, 92 S.Ct. 2182. A delay of eight months or longer is presumptively prejudicial. Atterberry v. State, 667 So.2d 622, 626 (Miss.1995).
¶ 25. McGee was first "accused" on the day of his arrest, January 4, 2000. He was not tried until September 6, 2001. A mistrial was declared in his first trial, and he was tried again on September 24, 2001. Since we are dealing with two trials, we must analyze the time periods separately to see if both were constitutionally speedy. Brengettcy v. State, 794 So.2d 987, 992 (¶ 8) (Miss.2001). The total delay between McGee's arrest and first trial was 611 days. This delay raises a presumption of prejudice and requires us to continue the Barker analysis as to the first trial setting. Id. at (¶ 12). The total delay between the mistrial and the second trial was eighteen days. This second delay is not presumptively prejudicial and, therefore, our inquiry ends as to the second trial. Id. at 992-93 (¶ 12).
2. Reasons for delay
¶ 26. Second, we look for the reasons for the delay. The State bears the burden of securing a speedy trial and of justifying any delay. DeLoach v. State, 722 So.2d 512, 517 (¶ 17) (Miss.1998); Turner v. State, 383 So.2d 489, 490 (Miss.1980). A defendant cannot complain of a delay that he caused. Poole v. State, 826 So.2d 1222, 1228 (¶ 17) (Miss.2002) (citing Perry v. State, 419 So.2d 194, 199 (Miss. 1982)). Where the State either causes the delay or cannot otherwise justify a delay, this counts against the State. Lee v. State, 759 So.2d 1264, 1268 (¶ 21) (Miss.Ct.App. 2000).
¶ 27. McGee was arrested January 4, 2000, and the first trial was not held until September 6, 2001. The record is silent as to the reason for this delay. The State offers no valid reason for the delay. It accuses McGee of stalling by hiring and firing his attorneys. The record belies this assertion.
¶ 28. While McGee did engage in a series of hiring and firing of attorneys, this did not occur until after he was convicted. He only changed counsel once before trial. He wrote Judge Graves asking that his first attorney be fired from his case. This was granted October 13, 2000, well in advance of any notice of trial setting in the record. The docket entries indicate September 6, 2001, was the first date the case was set for trial. The State has the burden of justifying this 611 day delay. Having failed to do so, this delay weighs against the State.
3. McGee's assertion of the right
¶ 29. Third, we consider whether McGee asserted his right to a speedy trial. A defendant's "assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." Barker, 407 U.S. at 531-32, 92 S.Ct. 2182. On March 8, 2001, McGee wrote a letter to Judge Graves's court administrator requesting a speedy trial.
¶ 30. The State counters that this is not good enough, because it was not *249 a formal motion. All that is required is that McGee request a speedy trial. There is no requirement as to form. The supreme court held that a letter written to the sheriff asking for a speedy trial was good enough to assert the right. Perry, 419 So.2d at 199. A letter to the constable asking for a speedy trial counts as an assertion. Hill v. Wainwright, 617 F.2d 375, 379 (5th Cir.1980). We hold that a letter to the judge's office asking for a speedy trial setting satisfies the requirement as well.
¶ 31. Although McGee did assert his right, he did not do so until one year, two months and four days after his arrest. The supreme court has weighed this factor against a defendant when he waited one year to assert his Sixth Amendment right, and we find also that McGee's failure to assert his right until over a year weighs against him. Smith, 550 So.2d at 409. We keep in mind that this is but one factor and is not fatal to McGee's claim. Id.
4. Prejudice to McGee
¶ 32. The final Barker factor considers prejudice to the defendant. "Prejudice is assessed in light of the interests which the speedy trial right was designed to protect." Barker, 407 U.S. at 532, 92 S.Ct. 2182. These include such interests as "to prevent oppressive pretrial incarceration, to minimize anxiety and concern of the accused and to limit the possibility that the defense will be impaired." Id. When there is a presumptive prejudice, it is incumbent upon the State to prove there is no prejudice. Anderson v. State, 874 So.2d 1000, 1008 (¶ 34) (Miss.Ct.App. 2004). "Nevertheless, if the defendant fails to show actual prejudice to his defense, this prong of the Barker balancing test cannot weigh heavily in his favor." Id.
¶ 33. McGee argues he was prejudiced by the loss of a witness. This witness was Officer Gray, one of the responding police officers. McGee argues that Gray "could have testified about the size of the yellow cloth" to help prove the victims were not aware of nor afraid of a weapon. McGee offers no basis for concluding that Officer Gray would have supported his defense theory, only that he "could have."
¶ 34. There is nothing in the record to show that Officer Gray was unavailable to testify. McGee merely asserts that he no longer works for the Jackson Police Department. Nowhere does McGee indicate his efforts to secure Officer Gray's presence at trial. In fact, no subpoena was ever issued to require Officer Gray to appear at trial. McGee cannot show his defense was impaired by Officer Gray's absence, if McGee cannot show that he actually wanted Officer Gray to testify.
¶ 35. In addition, the record does show that McGee was in jail from the date of his arrest through the trial. Oppressive incarceration is one of the evils against which the Sixth Amendment was designed to protect. However, McGee was convicted in federal court during this time. He was convicted on September 22, 2000, as a felon in possession of a firearm and was sentenced to serve fifty-one months in federal prison. Therefore, he was not actually prejudiced by oppressive incarceration in this case, since for the great majority of the time, he was imprisoned on another charge. McGee is left only with the presumption of prejudice assessed in the first factor. This factor weighs lightly against the State.
5. Balancing the factors
¶ 36. We balance the Barker factors considering the totality of the circumstances. "[T]hey are related factors and must be considered together with such other circumstances as may be relevant." Barker, 407 U.S. at 533, 92 S.Ct. 2182. The length and reasons for the delay *250 weigh against the State. The assertion of the right weighs against McGee. Even though he made a valid assertion, it came well beyond one year after his arrest. Finally, McGee has failed to show actual prejudice by the delay in this case. Given the lengthy delay in asserting his right and the complete absence of actual prejudice, we find that McGee was not deprived of his federal right to a speedy trial. We find this assignment of error is without merit.
¶ 37. THE ORDER OF THE HINDS COUNTY CIRCUIT COURT DENYING DISMISSAL OF THE INDICTMENT IS AFFIRMED. THE JUDGMENT OF CONVICTION OF TWO COUNTS OF ARMED ROBBERY AND LIFE SENTENCE WITHOUT THE POSSIBILITY OF PAROLE, PROBATION, REDUCTION, OR SUSPENSION IS REVERSED AND REMANDED FOR A NEW TRIAL. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, BARNES AND ISHEE, JJ., CONCUR.