# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 91-KA-01243-SCT

*MERVIN SANDERS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/6/91 |
| TRIAL JUDGE: | HON. JOE N. PIGOTT |
| COURT FROM WHICH APPEALED: | PIKE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOHN P. PRICE |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEIRDRE MCCRORY |
| DISTRICT ATTORNEY: | NA |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 6/6/96 |
| MOTION FOR REHEARING FILED: | 6/21/96 |
| MANDATE ISSUED: | 8/22/96 |

**EN BANC.**

**PITTMAN, JUSTICE, FOR THE COURT:**

¶1. On January 21, 1990, appellant Mervin Sanders was arrested for the crime of unlawful possession of cocaine with intent to deliver. He was indicted for this crime on October 17, 1991, and pled not guilty six days later. Sanders was then tried and found guilty on October 31, 1991, and on November 6, 1991, was sentenced to pay a $30,000 fine and serve thirty years without parole, probation, good time, or early release. We affirm.

## FACTS

¶2. In January 1990, the Mississippi Bureau of Narcotics (MBN) began a sting operation focused on Sanders which used informant Johnny Morris as their contact. Sanders was targeted by the bureau partially because he had sold Morris cocaine on many previous occasions. As a part of this operation, Morris recorded several telephone calls with Sanders in which Sanders agreed to travel from Brookhaven, Mississippi, to New Orleans and get Morris an ounce of cocaine for $1,120. The two of them also agreed that Morris would supply Sanders with a car for the journey. Morris ultimately decided to lend Sanders his beige 1982 Mazda 626 four-door which was missing its left taillight.

¶3. On January 20, MBN agents attached a "birddog" transmitting device to the Mazda designed to make following the car easier. Morris delivered the car to Sanders, who left Brookhaven that same day at about 5:30 p.m. The birddog tracked Sanders south on Interstate 55 until near Hammond, Louisiana. After they lost contact with the car, the agents met at the weight station at the Mississippi/Louisiana border and set up stationary surveillance points along Interstate 55. At about 2:20 a.m., Agents Ronnie Frazier and Craig Oster spotted the beige Mazda traveling northward on the interstate with Sanders behind the wheel. Sanders was stopped just north of Osyka in Pike County by a highway patrol officer working with the narcotics team. At trial Frazier testified as to why he felt they had sufficient probable cause to stop Sanders and search the car for cocaine:

> The conversations that were held between Mr. Sanders and Mr. Morris were recorded conversations. The meeting times were recorded. There was visual surveillance made when Mr. Sanders met with Mr. Morris, Mr. Morris gave Mr. Sanders the car, and there was a constant surveillance on the vehicle, tag number, description on the vehicle, when it left the State of Mississippi it was under constant surveillance. It was also pre-determined that there was an ounce of cocaine to be picked up for $1120.00.

After the vehicle was stopped, Sanders was asked to get out of the car. Agent Oster then went to the Mazda's right passenger's door and opened it and the glove box. Inside the glove box he found a package containing one ounce of cocaine.[1] The officers did not have a search warrant nor had they attempted to obtain one. Sanders was arrested for the crime of possession of more than one ounce of cocaine with intent.

¶4. Although the arrest took place on January 21, 1990, Sanders was not indicted until October 17, 1991. Sanders was free during the interim. Agent Frazier explained at the trial why the accused was not kept in prison:

> Yes, sir, - he was released on -- I think Agent Oster released him without bond because he showed intention that he wanted to cooperate maybe later on down the road. You lock a man up in jail, it goes in the newspaper, and it goes around the community, and in that situation he can't help himself. Its not unusual to do that.

Sanders pled not guilty at his October 23, 1991, arraignment and was tried on October 31.

¶5. Judge Pigott, prosecuting attorney Dunn Lampton, and defense attorney John Price discussed the admission of evidence of prior drug transactions between Mervin Sanders and Johnny Morris at some length in the trial below. This exchange was held after Morris testified outside the presence of the jury that he had bought cocaine from Sanders on many previous occasions:

> BY MR. LAMPTON: Your Honor, that's what I wanted to ask him about outside the presence of the jury.

> BY MR. PRICE: To which we object, Your Honor. This is testimony of previous illegal acts that are not admissible for this offense.

> BY THE COURT: Well, if the defense is entrapment the principle element is the predisposition of the defendant to commit the crime....I feel that that's the real test, whether or not the defendant was already predisposed to commit the crime, or, on the other hand, if the witness persuaded some

innocent person to go and commit an offense, that would be entrapment, but if the person was already predisposed to commit the offense, then the witness just provided the opportunity and then that would not be entrapment. All right.

BY MR. LAMPTON: I guess I'm still unclear if Mr. Price is using the defense of entrapment. I know he told the jury that on his opening statement, but I don't know if that's what he still claims or not.

BY MR. PRICE: I think it's obviously the defense, Your Honor.

BY THE COURT: All right. Well, if that is your defense, then I will permit the State to show the predisposition, if any, the Defendant had to commit the offense. All right.

Sanders did not testify at trial and the defense introduced no further evidence of entrapment. The defense did however request and receive an entrapment jury instruction.

¶6. The jury found Sanders guilty of the crime of unlawful possession of cocaine with intent to deliver. A sentencing hearing was held on November 6, 1991, at which evidence of two prior drug offense convictions was introduced and at which Sanders was sentenced as a habitual offender to pay a $30,000 fine and to serve 30 years without parole, probation, good time, or early release. A Motion for New Trial was filed by Sanders on November 14 and was overruled on December 5, 1991. He appealed to this Court the next day.

## LAW

### I. SUPPRESSION OF EVIDENCE

¶7. Sanders first claims on appeal that the lower court erred when it refused to suppress evidence found during the warrantless search of the Mazda. The Fourth Amendment to the United States Constitution guarantees that:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

¶8. The meaning of the Fourth Amendment has been greatly refined and expanded upon in the two centuries since its passage. One of the more notable examples of this jurisprudence concerns the automobile exception to the warrant requirement. This rule is well summarized in *Barry v. State*, 406 So. 2d 45, (Miss. 1981): "A warrantless search of an automobile has long been recognized as an exception to the warrant requirement provided probable cause and exigent circumstances exist. This exception is founded on the basic premise that for IV Amendment purposes there is a fundamental difference between houses and cars." Id. at 47 (citations omitted). The practical effect of this exception is that evidence seized without a warrant from an automobile is admissible if there is probable cause and an exigency.

¶9. Frazier testified at length as to why he and his fellow agents thought they had probable cause to search Sanders' car. Their informant, Johnny Morris, had recorded conversations with Sanders in which Sanders

agreed to go to New Orleans and get Morris an ounce of cocaine for $1120, the agents knew the appearance of the car, its licence plate number and its distinctive missing taillight, and the agents had been told by Morris that he and Sanders had made several similar transactions in the past. The agents had probable cause to believe that the promised illegal drugs would be somewhere in the car. The first part of the automobile exception was therefore satisfied.

¶10. The exigency prong is addressed in the Mississippi Federal case of *Henry v. Williams*, 299 F.Supp. 36 (N.D. Miss. 1969):

> [T]he exceptional circumstances excusing the issuance of a warrant are: 1) when the vehicle searched is in motion; 2) when the officers have probable cause to believe the vehicle contains contraband subject to search; and 3) when it is impracticable to secure a warrant because the vehicle can and may be removed from the jurisdiction.

Id. at 45.

¶11. Applying these criteria, the vehicle was in motion when the agents stopped it, the agents had probable cause to believe that the vehicle contained contraband, and finally, because the vehicle was apprehended close to the Mississippi/Louisiana border it could easily have been removed from Mississippi. The exigency requirement excusing the issuance of a warrant was satisfied by the facts of the case three times.

¶12. Sanders has further complained on appeal that the narcotics agents should have gotten a search warrant in the several hours that passed between Morris giving Sanders his car and Sanders' arrest. The application of the third *Henry* criteria to the facts of the case shows why this contention is also without merit. Even if it had been possible for one or more agents to have been taken off a surveillance which involved examining every northbound car on Interstate 55 over a period of several hours at night, the nearness of the state line and the ease with which Sanders could have fled the agent's jurisdiction made getting a search warrant impracticable. The record demonstrates both that the agents had probable cause to believe that the car driven by Mervin Sanders contained cocaine and that an exigency existed which would allow a warrantless search. The admission of the fruits of this search was proper.

## II. PRIOR ILLEGAL ACTS

¶13. Sanders next complains that the court erred when it allowed the State to introduce his prior illegal acts. At the trial below, defense attorney Johnny Price told Judge Pigott and prosecuting attorney Dunn Lampton that he proposed to use the doctrine of entrapment as a defense, requested and received a jury instruction on entrapment, and discussed entrapment during his opening argument. "Where entrapment is pled as a defense, evidence of predisposition is always relevant and, hence, always admissible. This is because the very idea of entrapment suggests that the person would have never committed a crime had he not been persuaded or otherwise enticed." *Moore v. State*, 534 So. 2d 557, 558-559 (Miss. 1988) (citations omitted). Additionally, under *Sayre v. State*, 533 So. 2d 464 (Miss. 1988), "[w]hether (the defendant) has committed other similar acts in the past is relevant within our evidence law; that is, such evidence has a tendency to show predisposition." Id. at 466.

¶14. The facts of *Sayre* are somewhat similar to the facts of the case below. There, as in this case, the defendant never waived his right to claim entrapment or lack of predisposition. Furthermore, in both *Sayre* and the case at bar, the case went to the jury with an entrapment instruction and the defense ultimately failed

to prove their entrapment claim. This Court wrote in *Sayre* in discussing whether testimony about previous drug sales brought out on cross-examination of the defendant was admissible:

> That Sayre ultimately failed in his entrapment defense hardly affects admissibility. At the time the prosecuting attorney was faced with deciding whether to cross-examine Sayre, the predisposition issue was alive and well. Sayre had not rested his case, and the Circuit Court would have erred had it thereafter denied him the right to offer evidence or lack of predisposition. The Circuit Court correctly held Sayre's prior marijuana-related criminal activity relevant and thus admissible.

> The argument we are presented today is that, because Sayre never denied predisposition, the prosecution was precluded from proving it. This logic would empower an accused to pretermit much of the prosecution's proof by an admission or a failure to deny. We have rejected this tactic in cases with much higher stakes.

Id. at 466-467.

¶15. In the case at bar, the defense raised the issue of entrapment yet never introduced evidence of entrapment. Nevertheless, the issue was alive throughout the trial, from being discussed on the defense's opening argument to being submitted as a jury instruction. If a defendant says to the jury, judge and prosecution that he will raise proof of a certain defense, the judge and prosecution should be allowed to believe that the defendant will indeed raise proof of that defense. The prosecution should also be allowed to introduce evidence based on this belief which will rebut that defense.

¶16. When Judge Pigott let the disputed evidence of Sanders' previous drug transactions with Morris be introduced, entrapment was still very much a viable defense. Indeed, as entrapment was allowed as a jury instruction, one could say that it was an issue throughout the entire trial. Because the disputed evidence went to prove Sanders' predisposition to commit the crime of which he was accused, and as such predisposition evidence is admissible where entrapment is raised as a defense, the ruling of Judge Pigott which allowed the introduction of such evidence was proper.

### III. DISPROPORTIONATE SENTENCE

¶17. Sanders' third assignment of error is that his sentence was disproportionate to his crime and constituted cruel and unusual punishment. Sanders was found guilty of possession of cocaine with intent to deliver and was sentenced as a habitual offender to pay $30,000 and to serve 30 years without the possibility of early parole. Cocaine is a Schedule II controlled substance. Miss. Code Ann. § 41-29-115. Under Miss. Code Ann. § 41-29-139:

> (a) Except as authorized by this article, it is unlawful for any person knowingly or intentionally:

> (1) To sell, barter, transfer, manufacture, distribute, dispense or possess with intent to sell, barter, transfer, manufacture, distribute or dispense, a controlled substance;...

> . . .

> (b) Except as otherwise provided in subsection (f) of this section or in Section 41-29-142, any person who violates subsection (a) of this section shall be sentenced as follows:

(1) In the case of controlled substances classified in Schedule I or II, as set out in Sections 41-29-113 and 41-29-115, except one (1) ounce or less of marihuana, and except a first offender as defined in Section 41-29-149(e) who violates subsection (a) of this section with respect to less than one (1) kilogram but more than one (1) ounce of marihuana, such person may, upon conviction, be imprisoned for not more than thirty (30) years and shall be fined not less than One Thousand Dollars ($1,000) not more than One Million Dollars ($1,000,000) or both;

Miss. Code Ann. § 41-29-139.

¶18. As Sanders had been convicted of the unlawful sale of marijuana twice before and had been sentenced both times to terms longer than one year, his sentence was enhanced under the maximum term provisions of § 99-19-81. Under this statute:

Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.

Miss. Code Ann. §99-19-81.

¶19. It is the combination of § 41-29-139 and § 99-19-81 which led to Sanders' sentence of $30,000 and thirty years without parole.

¶20. "This Court has consistently held that a sentence will be upheld if within statutory limits. Also, where a sentence does not exceed statutory limits, it does not constitute cruel and inhuman treatment." *Adams v. State*, 410 So. 2d 1332, 1334 (Miss. 1982) (citations omitted). Furthermore, § 99-19-81 was specifically found by this Court to be constitutional and not violative of the Eighth Amendment in *Bridges v. State*, 482 So. 2d 1139 (Miss. 1986). As § 41-29-139(b)(1) allows fines of $1,000 to $1,000,000 and prison terms of up to 30 years, and as Sanders' sentence fell well within these guidelines, his claim that his sentence was unconstitutional under the Eighth Amendment is without merit and Judge Pigott's sentence is therefore affirmed.

### IV. SPEEDY TRIAL

¶21. Sanders was arrested on January 21, 1990, indicted on October 17, 1991, and tried on October 31, 1991. He claims as his final assignment of error on appeal that the long delay between his arrest and his indictment and trial denied him his right to a speedy trial. Before this Court can decide the merits of this issue, however, two rather high procedural hurdles must be leapt. First, the appellant did not address this point in his initial Appellant's Brief but instead raised it for the first time in his Rebuttal Brief. This Court has not determined if one may so introduce new assignments of error but the Fifth Circuit has, stating, "We will not consider issues raised for the first time in an appellant's reply brief." *U.S. v. Anderson*, 5 F.3d 795 (5th Cir. 1993), *cert. denied, Barnett v. U.S.*, 114 S.Ct. 1118 (1994). This is a fitting and obvious rule for this Court to adopt. Appellants cannot be allowed to ambush appellees in their Rebuttal Briefs, thereby denying the appellee an opportunity to respond to the appellant's arguments.

¶22. The second procedural hurdle concerns the inaction of defense counsel in the trial below. Defense

counsel did not object or even mention the issue of speedy trial while the case was being tried. The first time this issue was raised was in the appellant's rebuttal brief submitted almost a full year after the trial. This Court can only decide this issue if it views it as plain error under Supreme Court Rule 28(a)(3). As a rule, the Supreme Court only addresses issues on plain error review when the error of the trial court has impacted upon a fundamental right of the defendant. "It has been established that where fundamental rights are violated, procedural rules give way to prevent a miscarriage of justice." *Gray v. State*, 549 So. 2d 1316, 1321 (Miss. 1989). Although the right to a speedy trial is a fundamental constitutional right, it is difficult to tell if this right has been violated in the case at bar. Under the test of *Barker v. Wingo*, 407 U.S. 514 (1972), four factors must be considered before one can determine if the right to a speedy trial has been denied: (1) length of delay, (2) reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) prejudice resulting to the defendant. Sanders' discussion of this issue on appeal is quite brief and does not state how the delay violated his rights. The following is an excerpt taken from Sanders' reply brief:

### SUGGESTION OF PLAIN ERROR NOT PREVIOUSLY ASSIGNED

> Appellant would respectfully point out to the Court that the alleged offense of which he was convicted took place on or about January 21, 1990. However, the Appellant was not indicted until October 17, 1991, and tried on October 31, 1991.
>
> Since the time of the filing of Appellant's Brief this Court has decided the case of Jenkins v. State, No. 90-KA-0163 pertaining to denial of speedy trial rights to a defendant and the remedy therefor.
>
> Appellant would point out to this Court that the State made no attempt to justify its delay in bringing the Defendant to his day in Court and that the defendant's rights were prejudiced thereby.
>
> Appellant respectfully requests that this issue be recognized by this Court as plain error which should be addressed by the Court although not assigned as error in the lower Court. Appellant requests that this Court review the procedures in his case in light of Jenkins v. State and find that his rights have been violated therein.

¶23. As Sanders has not adequately demonstrated a violation of a fundamental right, this Court should not use the rule of plain error to hear this issue.

¶24. Finally, if this Court were to address the merits of this issue, it would be hard pressed to find a violation of Sanders' right to a speedy trial. The only prong of *Barker* that Sanders may have satisfied is that of length of delay. This Court has found that a delay as short as 298 days may be enough to satisfy the first of the *Barker* requirements. *Bailey v. State*, 463 So. 2d 1059 (Miss. 1985). Over a year and a half passed between Sanders' arrest and his indictment and trial, almost certainly a long enough delay to satisfy *Barker*. Nevertheless, Sanders does not fare as well in regard to the remaining three speedy trial prongs. He does not point to any evidence which would establish a reason for the delay or which would show how he was prejudiced.[2] Furthermore, Sanders never asserted his right to a speedy trial. When one looks at the combination of these factors it becomes apparent that Sanders' claim that he was denied his right to a speedy trial can not be supported.

¶25. This Court should not address this issue as Sanders did not raise it in his initial appellant's brief. Alternatively, this issue should also not be addressed because Sanders did not raise this issue below, and

has not shown that this is a suitable case for plain error revue. Finally, if this Court were to address the merits of this issue, it would find no violation of Sanders' right to a speedy trial. For any and all of these reasons, this assignment of error is without merit.

## CONCLUSION

¶26. The lower court did not err by allowing the evidence of the cocaine to be introduced. The police properly searched Sanders' car without a warrant due to the exigent circumstances. Nor was error committed by allowing the testimony of prior illegal acts into evidence. Sanders' claimed an entrapment defense, and thus, permitted the State to offer testimony to show Sanders' predisposition to committing the alleged crime. Thus, the lower court was not in error in admitting testimony of the prior meetings and deals between Morris and Sanders. Because Sanders was a habitual offender, his sentence was within the statutory guidelines and not disproportionate to his crime. Finally, this Court will not even consider the issue of a speedy trial due to the failure to properly object or raise it on appeal. Thus, the lower court was correct in its rulings below and its actions are affirmed.

**¶27. CONVICTION OF UNLAWFUL POSSESSION OF COCAINE WITH INTENT TO DELIVER AND SENTENCE OF THIRTY (30) YEARS, AS AN HABITUAL OFFENDER, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND PAYMENT OF A FINE OF $30,000.00 AFFIRMED.**

**LEE, C.J., PRATHER, P.J., BANKS, ROBERTS AND SMITH, JJ., CONCUR. MILLS, J., CONCURS IN RESULT ONLY. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J.**

### McRAE, JUSTICE, DISSENTING:

¶28. Because the State failed to meet their burden to prove it was excused by the "automobile exception" from obtaining a warrant, I must respectfully dissent. The Fourth Amendment to the United States Constitution and the Mississippi Constitution of 1890, art. III, § 3 forbid unreasonable searches and seizures. *See Rooks v. State*, 529 So. 2d 546 (Miss. 1988) (search and seizure questions are analyzed under both the United States and Mississippi Constitutions); *see also Mapp v. Ohio*, 367 U.S. 643 (1961) (Fourth Amendment protection is provided to states through Due Process Clause of Fourteenth Amendment). Warrantless searches are "*per se* unreasonable under the Fourth Amendment - subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967).

¶29. It is recognized that an exception to the warrant requirement was carved out for automobiles in *Carroll v. United States*, 267 U.S. 132 (1925); *see Moore v. State*, 138 Miss. 116, 103 So. 483, 485 (1925) (adopting reasoning of *Carroll* in its interpretation of Fourth Amendment). However, the *Carroll* decision was based on the rationale that the government has always recognized a fundamental difference between situations in which a warrant is readily obtainable and those instances where "it is not practicable to secure a warrant" because the item to be searched can be "quickly moved out of the locality or jurisdiction

in which the warrant must be sought." ***Carroll***, 267 U.S. at 153. In order fulfill the Fourth Amendment's guaranty against unreasonable searches, **a seizing officer must obtain a warrant where practicable**, or show probable cause to the court if it is impossible to obtain a warrant prior to the search. ***Id***. at 156 (emphasis added); ***United States v. Ross***, 456 U.S. 798, 807 (1982).

¶30. Although the subject of the search in the case at bar was an automobile, the facts surrounding the search and seizure present a scenario in which the officers could have easily obtained a search warrant. As provided by ***Carroll***, only where it is impracticable for an officer to present the facts to a neutral and detached magistrate should there lie an exception to the warrant requirement. Because of the inherent mobility of the automobile, most cases involving automobiles will fall within the exception. *See* ***California v. Carney***, 471 U.S. 386 (1986) (concluding that inherent mobility of mobile home allowed warrantless search). However, to support the officers' belief of probable cause in this case, they articulated facts based on conversations between Sanders and the confidential informant which indicated that the automobile would travel from Pike County, Mississippi, to New Orleans and back again with an ounce of cocaine. The officers were aware that their own confidential informant would provide money and loan his car to Sanders for that purpose. At this point in time, the police had already determined that Sanders would be stopped upon his return to the state. Their plan at this stage of the operation was settled that Sanders would be searched upon crossing the Mississippi border. It is therefore absurd that the police maintained at trial that the circumstances did not allow sufficient time within which to obtain a warrant. If the officers had sufficient time to install an electronic tracking device into the car given to Sanders for the trip, how can one conclude that a warrant could not have been obtained in the time frame presented? The intent to stop Sanders when he returned from New Orleans existed long before Sanders was provided an automobile for transportation. They likewise knew they had additional time after Sanders departed within which to secure a warrant, and in the nine hours it took him to return, they were able to arrange for the highway patrol to stop Sanders.

¶31. "'[T]he burden is on those seeking the exemption to show the need for it.'" ***Coolidge v. New Hampshire***, 403 U.S. 443, 455 (1971) (quoting ***United States v. Jeffers***, 342 U.S. 48, 51 (1951)). The state has wholly failed to meet this burden. Even in the time period after the car was provided to Sanders, there was ample time for the officers to have secured a warrant. The entire underlying factual basis of probable cause indicated that Sanders would return to this State where the police would be waiting. *See* ***Illinois v. Gates***, 462 U.S. 213 (1983) (probable cause determined by examining totality of circumstances); ***Lee v. State***, 435 So. 2d 674 (Miss. 1983) (adopting "totality of circumstances" analysis). By everyone's account, the narcotics officers could simply wait for Sanders to return to a specific location in their jurisdiction. If the lower court is to believe that probable cause is supported by the totality of the circumstances, then it must also conclude that the facts of this particular case have swept away the mobility rationale which led to the Court's creation of the automobile exception in the first place. A warrant should have been obtained prior to the search of the automobile being driven by Sanders, as it was clearly practicable for the officers to have contacted a neutral and detached magistrate.

¶32. The Fourth Amendment requires a liberal interpretation in order to secure each individual's fundamental right of privacy. ***Byars v. United States***, 273 U. S. 28, 32 (1927); ***Barker v. State***, 241 So. 2d 355, 358 (1970) (right against unreasonable search and seizure is strictly construed against state in favor of citizen). "The word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears." ***Coolidge***, 403 U.S. at 461. In construing the Fourth Amendment liberally, we should therefore look beyond the mere fact that the item being searched was an automobile. In ***Coolidge***, the defendant was arrested at his home where his car remained parked outside in the driveway. ***Id***. at 460-61.

His car was later towed to the police station where it was searched without a warrant. *Id*. The Supreme Court determined that the warrantless search of the automobile was not permitted by the rule in *Carroll* since there was no indication that the car along with the evidence would be removed outside of the reach of the officers. *Id*. at 461. The Court concluded there were no exigent circumstances which justified a warrantless search, and that the automobile exception was irrelevant because there were no facts suggesting that it was impracticable to have secured a warrant. *Coolidge*, 403 U.S. at 462-64; *see Barry v. State*, 406 So. 2d 45, 47 (Miss. 1981) (warrantless search of automobiles allowed only when exigent circumstances exist).

¶33. The case at hand similarly involved a situation where the facts gave no indication that the car would be removed beyond the reach of the arresting officers. Instead, the facts indicated that Sanders would be returning to their jurisdiction some time later in the day. It was certainly practical for the officers to have obtained the warrant before the car was provided to Sanders or in the nine hours between the time Sanders departed Brookhaven and returned from New Orleans. As was found in the *Coolidge* case, "there [was] nothing in this case to invoke the meaning and purpose of the rule of *Carroll v. United States*." *Coolidge*, 403 U.S. at 461.

¶34. The warrant requirement is imposed on law enforcement officials so that individuals with a special interest in obtaining an arrest or conviction in the case are not also given the authority to determine whether the facts provide probable cause for a search.

> The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from the evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers.

*Johnson v. United States*, 33 U.S. 10, 13-14 (1948); *see United States v. Lefkowitz*, 285 U.S. 452, 464 (1932) (concluding that Fourth Amendment is better preserved by requiring valid warrant from neutral and detached magistrate instead of "reliance upon the caution and sagacity of petty officers while acting under the excitement that attends the capture of persons accused of crime"). The case before this Court today presents the classic example of a situation where police officers maintained an eager interest in making an arrest without regard to our constitution and the rights of all our citizens.

¶35. The automobile exception should not be interpreted so broadly under the Mississippi Constitution so as to encompass the facts of this case. *See Rooks*, 529 So. 2d at 551 (stating that this Court is not bound by Federal courts' interpretation of Fourth Amendment); *Penick v. State*, 440 So. 2d 547, 552 (Miss. 1983) ("The words of our Mississippi Constitution are not balloons to be blown up or deflated every time, and precisely in accord with the interpretation of the U.S. Supreme Court"). The automobile exception was created by necessity because in the usual case the suspect has the ability to drive his vehicle beyond the investigating officer's jurisdiction before a warrant can be issued. Because all of the facts supporting probable cause indicated that the car would actually return to their jurisdiction hours later, the officers have simply failed to meet their burden to demonstrate that it was necessary for them to utilize the automobile

exception. A new trial should be ordered and any evidence obtained in the search of the automobile should be suppressed on remand. The validity of the right against unreasonable search and seizure and the justifications for the warrant requirement command this result. Accordingly, I dissent.

**SULLIVAN, P.J., JOINS THIS OPINION.**

1. A test administered by the Mississippi Crime Laboratory later confirmed the identity of the substance in the bag.

2. One possible reason for the delay was raised by Agent Frazier at trial when he spoke of the possibility of Sanders becoming a state informant.