# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-CT-00487-SCT

*TERRY DORA*

*v.*

*STATE OF MISSISSIPPI*

### ON WRIT OF CERTIORARI

DATE OF JUDGMENT:  11/23/2004
TRIAL JUDGE:  HON. LEE J. HOWARD
COURT FROM WHICH APPEALED: LOWNDES COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT: TERRY DORA (PRO SE)
ATTORNEY FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL
      BY: W. GLENN WATTS
DISTRICT ATTORNEY:  FORREST ALLGOOD
NATURE OF THE CASE:  CRIMINAL - FELONY
DISPOSITION:  THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. THE JUDGMENT OF THE CIRCUIT COURT OF LOWNDES COUNTY IS REINSTATED AND AFFIRMED - 06/12/2008
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1. A jury found Terry Dora ("Dora") guilty of possessing more than thirty grams of cocaine. The Circuit Court of Lowndes County sentenced him to sixty years in the custody of the Mississippi Department of Corrections ("MDOC") as a habitual offender and prior violator of the Mississippi Uniform Controlled Substances Act. On appeal, the Mississippi Court of Appeals reversed and remanded for a new trial, finding the circuit court had abused

its discretion in overruling Dora's objection and accompanying motion for mistrial based on Dora's claim that improper statements by the prosecutor were used in rebuttal closing argument. The Court of Appeals further instructed the circuit court to conduct a constitutional speedy-trial hearing on remand. Thereafter, the State filed a "Petition for Writ of Certiorari," which this Court granted. We reverse the Court of Appeals and reinstate and affirm the judgment of the circuit court.

**FACTS**

¶2. On August 3, 2001, after obtaining a search warrant for a house where suspected drug sales had occurred, the Columbus Police Department entered the home, which was owned and occupied by Rebecca Dora ("Rebecca"), defendant Dora's aunt. Rebecca and her seventeen-year-old daughter Alicia were sitting on the couch in the living room. Less than a minute after the police entered the home, Dora was seen exiting the bathroom.[1] Dora was ordered to the ground, with his feet still inside the bathroom. The investigating officer found 35.63 grams of crack cocaine (estimated street value of $3,500) in a plastic baggy underneath tissue paper in a garbage can in the same bathroom. Cash totaling $1,050 was found under towels on shelves in the same bathroom. A plastic bag of coffee grounds was in Dora's pocket. A set of digital scales was found on the table in the kitchen, only three to five feet from the bathroom door. In Rebecca's bedroom, the police found crack cocaine, marijuana and $2,500 in cash.[2]

---

[1]According to Sergeant Larry Taylor, locating the bathroom is significant in order "[t]o keep them from flushing any dope . . . ."

[2]According to a forensic scientist with the Mississippi Crime Laboratory, "[t]here is a dramatic difference in coloration" between the crack cocaine found in the bathroom and

2

¶3.     Dora, Rebecca, and Alicia were arrested for possession. The charges against Alicia were later dropped. Initially, Rebecca claimed responsibility for all the drugs found. However, at trial, she admitted responsibility only for what was found in her bedroom. She explained that Dora offered her $5,000 to "take the rap" while Dora, Rebecca, and Alicia were in the police car on the day of their arrest.[3] She said she did not know anything about the cash in the bathroom, but the $2,500 in the bedroom was money that Dora had asked her to hold for him. Rebecca reaffirmed that the crack cocaine and marijuana found in her bedroom belonged to her.

## PROCEEDINGS

¶4.     Dora was indicted on November 7, 2001, but was not served with the indictment until May 13, 2002. On May 21, 2002, Dora waived arraignment and entered his plea of not guilty. That same day, the circuit court set his trial for August 22, 2002.[4] Prior to the first date set for trial, Dora filed numerous pre-trial motions.[5] On August 19, 2002, an "Agreed

---

the crack cocaine found in Rebecca's bedroom.

[3]Alicia corroborated Rebecca's testimony. Rebecca admitted to initially lying to Taylor in telling him the cocaine belonged to her.

[4]The order of the circuit court noted that "1. The Defendant is remanded to the custody of the Sheriff unless lawful approved bond is posted in the amount of None - Probation/Parol violation." On August 20, 1997, Dora was convicted of sale of cocaine in the Circuit Court of Lowndes County and sentenced to twenty years in the custody of the MDOC. On November 12, 2001, Dora was convicted of possession of cocaine greater than 0.1 gram but less than two grams in the Circuit Court of Winston County and sentenced to two years in the custody of the MDOC.

[5]Among those motions, Dora filed a "Motion to Quash Indictment" in which he claimed violations of the Sixth Amendment to the United States Constitution by virtue of the method of presentation of evidence to the grand jury and the allegedly vague, ambiguous, and indefinite nature of the indictment.

Order of Continuance" was entered, resetting his trial for November 14, 2002. Subsequently, eight "Agreed Orders of Continuance" were filed, ultimately resulting in a trial in November 2004.[6] In August 2003, the State filed a "Motion to Amend Indictment" to include Dora's prior felony convictions for the sale of cocaine and the possession of cocaine greater than 0.1 gram but less than two grams. The State sought to "include the prior offender information pursuant to Section 41-29-147 M.C.A. (1972) as a second or subsequent offender of the Mississippi Uniform Controlled Substances Act and the habitual offender status of [Dora] pursuant to 99-19-81 M.C.A. (1972)." Trial commenced on November 9, 2004.

¶5.     Following trial, the jury found Dora guilty. After deferring sentencing, the circuit court granted the State's "Motion to Amend Indictment" and ordered that:

> the Indictment . . . should be amended to include the following language[:]
>
> ". . . And Further that the said [Dora] was previously convicted in the Circuit Court of Lowndes County, Mississippi, on August 20, 1997, in cause number 1995-0381-CR1, Count 2, for the crime of Sale of Cocaine, a felony and a violation of the Mississippi Uniform Controlled Substances Law, and sentenced to serve a term of twenty (20) years in the [MDOC]; and That the said [Dora] was previously convicted in the Circuit Court of Winston County, Mississippi on November 12, 2001, in cause number 2001-0047-CR, for the crime of Possession of Cocaine greater than .1 gram but less than 2 grams, a felony and in violation of the Mississippi Uniform Controlled Substances Law, and sentenced to serve a term of two (2) years in the [MDOC]."

On November 23, 2004, the "Order of Sentence" of the circuit court found "beyond a reasonable doubt that [Dora] is a Habitual Offender within the meaning of § 99-19-81 MCA, 1972 and a prior violator of the Mississippi Uniform Controlled Substances Act[,]" and

---

[6]As late as October 25, 2004, Dora filed a "Motion for Time Within Which to File Brief or Memorandum of Law in Support of Motion to Suppress." The motion specifically stated that its purpose was "so that justice may be done and not for purposes of delay."

sentenced him to sixty years in confinement, adding that "said sentence shall not be reduced or suspended, nor shall said Defendant be eligible for parole or probation."[7] Dora's "Motion for Judgment Notwithstanding the Verdict or, in the Alternative, a New Trial" was overruled by the circuit court. Dora then filed notice of appeal. The case was assigned to the Court of Appeals.

¶6.     The Court of Appeals reversed and remanded for a new trial, concluding that the circuit court had abused its discretion in overruling Dora's objection and denying his motion for mistrial, based on the following statement made by the prosecutor in rebuttal closing argument:

> [y]ou also heard the fact that it is undisputed, [l]adies and [g]entlemen, that this defendant told Rebecca Dora, I will give you $5,000; I'm sorry I got you into this trouble, but I will give you $5,000 to go in there and take the rap for me. That is also undisputed. Nobody came forward and said that didn't happen. I submit to you, [l]adies and [g]entlemen, that that is strong evidence that –

See *Dora v. State*, 2007 Miss. App. LEXIS 331 at *7-9 (Miss. Ct. App. May 15, 2007). The Court of Appeals found the aforementioned statement impermissible, relying upon *Livingston v. State*, 525 So. 2d 1300 (Miss. 1988), and *Whigham v. State*, 611 So. 2d 988 (Miss. 1992). See *Dora*, 2007 Miss. App. LEXIS 331 at *9. Additionally, the Court of Appeals ordered the trial court to conduct a constitutional speedy-trial hearing as "[w]hen the constitutional right to a speedy trial violation is raised for the first time on appeal, the case is remanded to the lower court to consider reasons for the delay." *Id*. at *11.

---

[7]Dora was also fined the statutory maximum amount of $2,000,000.

5

**ISSUES**

¶7.    Following the decision of the Court of Appeals, the State filed a "Petition for Writ of

Certiorari," which this Court granted.  *See* Miss. R. App. P. 17(a).  Mississippi Rule of

Appellate Procedure 17(a) provides, in part, that:

> [s]uccessive review of a decision of the Court of Appeals by the Supreme
> Court will ordinarily be granted only for the purpose of resolving *substantial
> questions of law of general significance*.  Review will ordinarily be *limited to*:
>
> > (1) cases in which it appears that the Court of Appeals has
> > rendered a decision which is *in conflict with* a prior decision of
> > the Court of Appeals or published Supreme Court decision . . .
> > .

Miss. R. App. P. 17(a) (emphasis added).  Based upon that criteria, this Court will consider:

> (1) Whether the circuit court erred in denying Dora's motion for mistrial based
> on Dora's claim that the prosecutor commented on his failure to testify.
>
> (2) Whether Dora was denied his constitutional right to a speedy trial.[8]

---

[8]In Dora's "Motion to Amend 'Written Response to Writ of Certiorari,'" he requested this Court's consideration of "two issues which should have been considered by the Mississippi Court of Appeals."  Those issues are: (1) whether the circuit court erred by failing to grant Dora's motion for a directed verdict and motion for judgment notwithstanding the verdict and/or whether the jury verdict was against the overwhelming weight of the evidence and (2) whether the circuit court erred in denying Dora's motion to quash the indictment.  Finding no error on the part of the circuit court in its rulings thereon, this Court exercises its authority to "limit the question on review[,]" Miss. R. App. P. 17(h), and denies Dora's motion.

Relatedly, however, the Court of Appeals properly noted that the jury instruction on the law of possession did not include the element of character of the substance.  While this Court agrees that was error, we find it harmless in light of clear evidence showing beyond a reasonable doubt that Dora "committed the act charged . . . under such circumstances that every element of the offense existed."  ***Carr v. State***, 208 So. 2d 886, 889 (Miss. 1968).

6

**ANALYSIS**

**I. Whether the circuit court erred in denying Dora's motion for mistrial based on Dora's claim that the prosecutor commented on his failure to testify.**

¶8.     This Court has stated that:

> [a]ttorneys are allowed a wide latitude in arguing their cases to the jury. However, prosecutors are not permitted to use tactics which are inflammatory, highly prejudicial, or reasonably calculated to unduly influence the jury. ***Hiter v. State***, 660 So. 2d 961, 966 (Miss. 1995). The standard of review that appellate courts must apply to lawyer misconduct during opening statements or closing arguments is whether the *natural and probable effect* of the *improper argument* is to *create unjust prejudice against the accused* so as *to result in a decision influenced by the prejudice so created*. ***Ormond v. State***, 599 So. 2d 951, 961 (Miss. 1992).

***Sheppard v. State***, 777 So. 2d 659, 661 (Miss. 2000) (emphasis added). Furthermore,

"[w]hether to grant a mistrial is within the sound discretion of the trial court. ***Shelton v.***

***State***, 853 So. 2d 1171, 1183 (Miss. 2003). The standard of review for denial of a motion

for mistrial is *abuse of discretion*. ***Pulphus v. State***, 782 So. 2d 1220, 1222 (Miss. 2001)."

***Wright v. State***, 958 So. 2d 158, 161 (Miss. 2007) (emphasis added).

¶9.     The rebuttal closing-argument statement of the prosecution at issue was as follows:

> [y]ou also heard the fact that it is undisputed [l]adies and [g]entlemen, that this defendant told Rebecca Dora, I will give you $5,000; I'm sorry I got you into this trouble, but I will give you $5,000 to go in there and take the rap for me. That is also undisputed. Nobody came forward and said that didn't happen. I submit to you, [l]adies and [g]entlemen, that that is strong evidence that –

Dora objected to this statement and moved for a mistrial. According to the circuit court:

> [t]he defendant has stated that in his opinion that the State's comments in his argument that certain evidence was uncontradicted, undisputed arises to the level of being a comment on the failure of the defendant to testify as a witness. *The Court did not view it that way, and therefore, overrules the objection and the motion for a mistrial.*

7

(Emphasis added). Conversely, the Court of Appeals concluded that "[t]he jury could reach no other conclusion except that the prosecutor was telling them, 'Look, if Rebecca and her daughter were not telling the truth, Dora would have taken this witness stand and denied it[,]'" *Dora*, 2007 Miss. App. LEXIS 331 at *8, and, therefore, reversed the trial court, finding it abused its discretion in not granting the mistrial. *See id*. at *9. The Court of Appeals decision cited this Court's holdings in *Whigham* and *Livingston*. *See id*.

¶10.     Shortly before the Court of Appeals released its decision in *Dora*, this Court held that:

> *Livingston* and its progeny are overruled to the extent that they are inconsistent with this opinion because: (1) the reversal of Livingston's conviction was based in large part on an evidentiary statute [Mississippi Code Annotated Section 13-1-9] which has since been repealed; and, (2) this Court in *Livingston* erroneously interpreted the U.S. Supreme Court's decision in *Griffin* [*v. California*, 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965)], as clarified by [*United States v. Robinson*, 485 U.S. 25, 108 S. Ct. 864, 99 L. Ed. 2d 23 (1988)], which this Court failed to acknowledge in *Livingston*.

*Wright*, 958 So. 2d at 166.[9] In *Robinson*, the United States Supreme Court specifically stated:

> [t]he Court of Appeals and respondent apparently take the view that any "direct" reference by the prosecutor to the failure of the defendant to testify violates the Fifth Amendment as construed in *Griffin*. *We decline to give Griffin such a broad reading, because we think such a reading would be quite inconsistent with the Fifth Amendment, which protects against compulsory self-incrimination*.[10] The *Griffin* court addressed prosecutorial comment

---

[9]The date of this Court's opinion in *Wright* was April 5, 2007, however, the motion for rehearing was not denied until June 28, 2007. In the interim, on May 15, 2007, the Court of Appeals released its opinion in *Dora*.

[10]What does the Fifth Amendment expressly guarantee? The applicable clause of the Fifth Amendment states, "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In *Robinson*, the United States Supreme Court chose to construe the *Griffin* broad reading, relied upon by the dissent, as being inconsistent with the constitutional protection against compulsory self-incrimination.

8

which baldly stated to the jury that the defendant must have known what the disputed facts were, but that he had refused to take the stand to deny or explain them. We think there is considerable difference for purposes of the privilege against compulsory self-incrimination between the sort of comments involved in *Griffin* and the comments involved in this case.

*Robinson*, 485 U.S. at 31-32 (emphasis added). The Court added that:

[t]he broad dicta in *Griffin* to the effect that the Fifth Amendment "forbids . . . comment by the prosecution on the accused's silence," 380 U.S. at 615, *must be taken in the light of the facts of that case. It is one thing to hold, as we did in* **Griffin***, that the prosecutor may not treat a defendant's exercise of his right to remain silent at trial as substantive evidence of guilt; it is quite another to urge, as defendant does here, that the same reasoning would forbid the prosecutor from fairly responding to an argument of the defendant by adverting*[11] *to that silence.*

*Robinson*, 485 U.S. at 33-34 (emphasis added).

¶11. In *Wright*, we "clarif[ied] the holdings in our prior cases. What is prohibited is any reference to the defendant's failure to testify implying that such failure is improper, or that it indicates the defendant's guilt." *Wright*, 958 So. 2d at 161. In other words:

"*[t]here is a difference . . . between a comment on the defendant's failure to testify and a comment on the defendant's failure to put on a successful defense.* [*Jimpson v. State*, 532 So. 2d 985, 991 (Miss. 1988)] (emphasis in original). The state is entitled to comment on the lack of *any* defense, and such comment will not be construed as a reference to the defendant's failure to testify by innuendo and insinuation. *Shook v. State*, 552 So. 2d 841, 851 (Miss. 1989) (emphasis added). The question is whether the prosecutor's statement can be construed as commenting upon the failure of the defendant to take the stand. *Ladner v. State*, 584 So. 2d 743, 754 (Miss. 1991).

*Wright*, 958 So. 2d at 161 (emphasis added). This approach effectively prevents "the protective shield of the Fifth Amendment" from being "converted into a sword that cuts back

---

[11]"Advert" is defined as "[t]o call attention: allude or refer." Webster's II New College Dictionary 17 (3d ed. 2001).

on the area of legitimate comment by the prosecutor on the weaknesses in the defense case." *Robinson*, 485 U.S. at 32 (quoting *United States v. Hastings*, 461 U.S. 499, 515, 103 S. Ct. 1974, 1984, 76 L. Ed. 2d 96, 110 (1983) (Stevens, J., concurring) (citation omitted)).

¶12.    "[P]rosecutorial comment must be examined in context[.]" *Robinson*, 485 U.S. at 33. "When the statement is not an outright violation, this Court will review the facts on a case-by-case basis." *Wright*, 958 So. 2d at 166 (citing *Logan v. State*, 773 So. 2d 338, 348 (Miss. 2000)). Furthermore, "not every comment regarding the lack of any defense is automatically deemed to point toward the defense's failure to testify." *Id*. (citing *Jimpson*, 532 So. 2d at 991). The statement at issue was clearly not an "outright violation," *id*., therefore, this Court must determine whether the circuit court abused its discretion in overruling Dora's motion for a mistrial. *See id*. at 161.

¶13.    Taken in context with Dora's theory of the case,[12] this Court finds that the prosecutor's statement was a permissible comment on the absence of evidence to support Dora's defense. The prosecutor's statement neither referred to Dora's failure to testify, nor by masked implication suggested Dora's silence was evidence of guilt. *See id*. "Such a comment was not addressing, or even alluding to, the defendant's failure to testify. . . . The [S]tate was simply pointing out that the defense's position [or theory] . . . was unsupported by the evidence." *Id*. at 167. At most, the prosecutor was "fairly responding to an argument of the defendant by adverting to that silence." *Robinson*, 485 U.S. at 34. Therefore, we

---

[12]In closing argument, counsel for Dora stated "our theory of the case . . . is that [Rebecca] stood to go to prison, and that they did not want to see Rebecca go to prison. So they put it on my innocent client, [Dora], who has the presumption of innocence before you, the jury."

cannot conclude that the circuit court abused its discretion in overruling Dora's motion for a mistrial. Given the applicable standards, as announced in **Robinson** and **Wright**, the learned circuit judge's finding that the comment that certain evidence is uncontradicted and undisputed when made, given the context and posture of the proceedings at the time, is unworthy of a mistrial. The trial judge's ruling complies with the standards announced in **Robinson** and **Wright**.

¶14. In light of the "wide latitude" extended to attorneys in their closing arguments, **Sheppard**, 777 So. 2d at 661, the deferential abuse-of-discretion standard applicable to the circuit court's denial of Dora's motion for mistrial, *see* **Wright**, 958 So. 2d at 161, the principle that "any doubts should be resolved in favor of the integrity, competence and proper performance of the official duties of the judge and prosecuting attorney," **Thomas v. State**, 247 Miss. 704, 712, 159 So. 2d 77, 80 (1963), and the fact that the prosecutor's statement is nothing more than "a comment on defendant's failure to put on a credible defense," **Wright**, 958 So. 2d at 164, this Court concludes that the Court of Appeals erred in ruling otherwise.

**II. Whether Dora was denied his constitutional right to a speedy trial.**

¶15. Regarding Dora's constitutional right to a speedy trial, the Court of Appeals found that:

> [u]nlike the statutory right, failure to assert the constitutional right is not fatal to the claim. **State v. Woodall**, 801 So. 2d 678, 685 (Miss. 2001) (quoting **Barker** [*v. Wingo*, 407 U.S. 514, 528, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972)]); **Smith v. State**, 550 So. 2d 406, 409 (Miss. 1989). When the constitutional right to a speedy trial violation is raised for the first time on appeal, the case *is* remanded to the lower court to consider reasons for the delay. **State v. Woodall**, 744 So. 2d 747, 749-50 (Miss. 1999). On remand, the court is instructed to conduct a constitutional speedy trial hearing.

11

***Dora***, 2007 Miss. App. LEXIS 331 at *10-11 (emphasis added).

¶16.    There is no dispute that Dora raised the speedy-trial issue for the first time on appeal. In his brief, Dora argued that three of the four ***Barker*** factors (length of delay, the reason for delay, and prejudice to the defendant) weighed in his favor[13] and, therefore, the violation of his constitutional right to a speedy trial was reversible error and should result in his discharge.  The State countered that "[t]he record reflects a lack of evidence for either a demand for trial, or of any prejudice to Dora's defense as a result of any delay."

¶17.    According to this Court:

> [b]oth our federal and state constitutions provide that an accused enjoys the right to a speedy trial.  The Sixth Amendment to the United States Constitution states, inter alia, that "the accused shall enjoy the right to a speedy and public trial."  U.S. Const. amend. VI.  Our state constitution states, inter alia, "the accused shall have a right to . . . a speedy and public trial."  Miss. Const. art. 3, § 26 (1890).  When one reads these federal and state constitutional provisions, there can be absolutely no question that the *accused* in a criminal proceeding has a constitutional right to a speedy trial.

***Guice v. State***, 952 So. 2d 129, 139 (Miss. 2007) (emphasis in original).  However, when the constitutional speedy-trial issue is raised for the first time on appeal:

> [t]his Court can only decide this issue if it views it as plain error . . . .  As a rule, the Supreme Court only addresses issues on plain error review when the error of the trial court has impacted upon a fundamental right of the defendant. "It has been established that where fundamental rights are violated, procedural rules give way to prevent a miscarriage of justice."  ***Gray v. State***, 549 So. 2d 1316, 1321 (Miss. 1989).

---

[13]Regarding "the defendant's assertion of his right," ***Barker***, 407 U.S. at 530, Dora argued that while he "failed to assert his right to a speedy trial[,]" he "did not waive his right to a speedy trial."

12

*Sanders v. State*, 678 So. 2d 663, 670 (Miss. 1996). This Court has stated that "the right to a speedy trial is a fundamental constitutional right[.]" *Id*. *See also Morgan v. State*, 793 So. 2d 615, 617 (Miss. 2001) (quoting *Gray*, 549 So. 2d at 1321) (plain-error review is applicable when the error is "so fundamental that it generates a miscarriage of justice[.]"); *Klopfer v. North Carolina*, 386 U.S. 213, 87 S. Ct. 988, 18 L. Ed. 2d 1 (1967).

¶18.    This Court and the Court of Appeals previously have found the constitutional speedy-trial-right issue to be waived for failure to be raised in the circuit court. *See Bell v. State*, 733 So. 2d 372, 376 (Miss. Ct. App. 1999) ("[b]ecause delays in bringing a matter to trial may work to the defendant's advantage, we do not consider a claim that the defendant was denied a speedy trial to be a matter of plain error or fundamental error that may be raised for the first time on appeal"); *Sanders*, 678 So. 2d at 670-71 ("this issue should also not be addressed because Sanders did not raise this issue below, and has not shown that this is a suitable case for plain error rev[iew]"). However, in *Woodall*, this Court stated:

> Woodall contends his constitutional right to a speedy trial was violated. However, he raises this issue for the first time on appeal. We have held that even when it appears that the speedy trial statute was violated, if it was not raised in the trial court, we *may* remand for the lower court to consider the reasons for the delay. *Barnes v. State*, 577 So. 2d 840, 844 (Miss. 1991). When the issue was not raised below and there was no plain error, we have refused to address allegations regarding speedy trial. [*Sanders*, 678 So. 2d at 671]. Therefore, the issue is remanded to the trial court for consideration of this issue.

*Woodall*, 744 So. 2d at 749-50 (emphasis added). The *Woodall* ruling was rendered in the factual context of a 1999 reinstatement of a 1998 indictment, for crimes allegedly committed by Woodall in 1995. Given the aforementioned scenario, this Court found that the circuit court erred in ruling that the State was barred from prosecuting Woodall because of an

13

alleged statute-of-limitations violation, while acknowledging this Court was unable to determine the reasons for the delay. Given such circumstances, the case was remanded to the circuit court for further proceedings, to include a constitutional speedy-trial inquiry.

¶19. This Court finds that the Court of Appeals erred in citing **Woodall** for the proposition that in all cases "[w]hen the constitutional right to a speedy trial violation is raised for the first time on appeal, the case *is* remanded to the lower court to consider reasons for the delay." **Dora**, 2007 Miss. App. LEXIS 331 at *11 (emphasis added). **Woodall** provides that when a violation of the speedy-trial statute is raised for the first time on appeal, this Court "*may* remand for the lower court to consider the reasons for the delay." **Woodall**, 744 So. 2d at 749-50 (emphasis added). Given that the constitutional right to a speedy trial is a fundamental right, *see* **Klopfer**, 386 U.S. at 213, this Court must determine whether plain-error review is applicable, i.e., whether an "error of the trial court has impacted upon a fundamental right[,]" **Sanders**, 678 So. 2d at 670, and is "so fundamental that it generates a miscarriage of justice[.]" **Morgan**, 793 So. 2d at 617. Absent the plain-error criteria being satisfied unequivocally, appellate courts are loath to address issues not presented to the trial court.

¶20. Dora seeks to leapfrog over the required plain-error analysis by making **Barker** genre assertions, i.e., prejudice caused by length of delay, prejudice by virtue of the amended indictment which included prior felony convictions, and prejudice due to a change in Rebecca's testimony. Considering the claims of Dora first for a plain-error analysis, we find the following. Regarding delay, the record reflects that trial was set initially for August 22, 2002. From August 19, 2002, until trial commenced on November 9, 2004, Dora assented

14

to the entry of nine separate "Agreed Orders of Continuance." Dora also filed numerous pre-trial motions, including a "Motion to Quash Indictment" in which he claimed violations of the Sixth Amendment to the United States Constitution, *without* asserting a violation of his Sixth Amendment right to a speedy trial. Accordingly, this Court finds this claim to be without merit.

¶21. Dora next asserts that he suffered prejudice because, prior to August 14, 2003, "he could not have been sentenced as a subsequent and habitual offender[.]" This Court finds that his contention that the trial court erred borders on the absurd and is patently untrue. Following Dora's conviction for possession of cocaine greater than 0.1 gram but less than two grams on November 12, 2001, his "subsequent and habitual offender" status was secure. As such, this Court also finds this claim to be without merit.

¶22. Finally, Dora argues that he suffered prejudice due to a change in Rebecca's testimony. This Court recently stated in *Miller v. State*, 956 So. 2d 221 (2007), that:

> "changes in witnesses' testimony are not necessarily due to the passage of time and do not, by themselves, constitute proof of prejudice due to delay." *State of Wisconsin v. Huusko*, 2006 WI App 223, 296 Wis. 2d 935, 724 N.W.2d 273, 2006 Wis. App. LEXIS 837 at *4 (Wisc. App. 2006). This Court is fully aware that witnesses regularly change their testimony and that, *standing alone*, does not mean that a delay in trial caused . . . prejudice.

*Miller*, 956 So. 2d at 225, n.10 (emphasis added).[14] Therefore, this Court finds the third claim to be without merit.

---

[14]*Miller* is otherwise distinguishable in that this Court remanded for a new trial due to the denial of a fundamentally fair trial. *See Miller*, 956 So. 2d at 227. As to the speedy-trial issue, this Court dismissed without prejudice, to be refiled, if desired, on remand. *See id*. at 225.

¶23. Dora's claims neither establish a plain-error basis to justify further appellate review, nor evidence "a miscarriage of justice[.]" *Morgan*, 793 So. 2d at 617. Therefore, this Court concludes that the Court of Appeals erred in remanding this case for a constitutional speedy-trial hearing.

## CONCLUSION

¶24. Accordingly, this Court reverses the Court of Appeals and reinstates and affirms the final judgment of the Circuit Court of Lowndes County.

¶25. **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. THE JUDGMENT OF THE CIRCUIT COURT OF LOWNDES COUNTY IS REINSTATED AND AFFIRMED. CONVICTION OF POSSESSION OF MORE THAN THIRTY (30) GRAMS OF COCAINE AND SENTENCE OF SIXTY (60) YEARS, AS A HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND PAYMENT OF A FINE OF $2,000,000.00, AFFIRMED.**

**SMITH, C.J., EASLEY, CARLSON AND LAMAR, JJ., CONCUR. DICKINSON, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER AND DIAZ, P.JJ., AND GRAVES, J.**

**DICKINSON, JUSTICE, DISSENTING:**

¶26. The state called Rebecca Dora to testify that Terry Dora offered her $5,000 to "take the rap" for him. Rebecca's daughter, Alicia, corroborated Rebecca's testimony. The conversation took place inside a police car, and the only other person present – that is, the only person who could possibly refute the testimony – was the defendant, Terry Dora, who was not called to testify. During the state's rebuttal closing argument, the prosecutor remarked:

> [y]ou also heard the fact that it is undisputed [l]adies and [g]entlemen, that this defendant told Rebecca Dora, I will give you $5,000; I'm sorry I got you into

this trouble, but I will give you $5,000 to go in there and <u>take the rap for me</u>.[15] That is also undisputed. <u>Nobody came forward and said</u> that didn't happen. I submit to you, [l]adies and [g]entlemen, that that is strong evidence that –
. . . .

Dora objected and moved for a mistrial. The trial court overruled the objection and denied the motion. The Court of Appeals, finding the prosecutor's comments improper, reversed. I agree with the Court of Appeals.

¶27. The Fifth Amendment to the United States Constitution guarantees criminal defendants the right to refuse to testify <u>against themselves</u>.[16] U.S. Const. amend. V. *See also* Miss. Const., art. 3, §26. According to the United States Supreme Court, the Fifth Amendment also forbids prosecutors from commenting on an accused's failure to testify. ***Griffin v. California***, 380 U.S. 609, 615; 85 S. Ct. 1229 ; 14 L. Ed. 2d 106 (1965).

¶28. Until recently, any reference to a defendant's failure to testify was fatal to the prosecution. ***Livingston v. State***, 525 So. 2d 1300, 1308 (Miss. 1988). However, we recently abandoned the hard-and-fast rule followed in ***Livingston***, and held that a prosecutor's reference to the defendant's silence is not, per se, reversible. We held that reversible error will be found only where the reference to the defendant's silence implies the defendant's guilt. ***Wright v. State***, 958 So. 2d 158, 164-66 (Miss. 2007). Our decision in ***Wright*** was in accord with the United Supreme Court's decisions in ***Griffin v. California***,

---

[15]Dora's use of the term "take the rap for me" can only mean that he is guilty and should be the one to "take the rap." Thus, the statement can be viewed as nothing less than an admission of guilt.

[16]I do not hold the opinion that prosecutors are always prohibited from referring to a defendant's silence. It is only where (as in this case) the prosecutor's comment implies that the defendant's silence equals guilt, that I draw the line.

380 U.S. 609, 615; 85 S. Ct. 1229 ; 14 L. Ed. 2d 106 (1965), and *United States v. Robinson*,

485 U.S. 25, 33-34 ;108 S. Ct. 864, 99 L. Ed. 2d 23 (1988).

¶29.   Prosecutors occasionally use innuendo and indirect commentary on the evidence

which may or may not be calculated to focus a jury's attention on the fact that the defendant

did not testify.   Thus, as stated in *Robinson*, courts must consider the facts on a case-by-case

basis.  *Id*.   In *Davis v. State*, this Court stated:

> Elementary to all trial proceedings is the proposition that the occurrence of any
> prejudicially incompetent matter or misconduct before a jury, the damaging
> effect of which cannot be removed by admonition or instructions, necessitates
> a mistrial.

*Davis v. State*, 530 So. 2d  694, 697 (Miss. 1988).

¶30.   Any fair reading of the prosecutor's comments in this case leads to the same

conclusion reached by the Court of Appeals, that is, that when the jurors heard the

prosecutor's comments, they "could reach no other conclusion except that the prosecutor was

telling them, 'Look, if Rebecca and her daughter were not telling the truth, Dora would have

taken this witness stand and denied it[,]'" *Dora v. State*, 2007 Miss. App. LEXIS 331 at *8

(Miss. Ct. App. October 2, 2007).

¶31.   The majority attempts to reconcile its conclusion by relying on *Robinson*.   However,

the prosecutor in *Robinson* made comments about the defendant's silence only after defense

counsel argued that the government did not allow his client to present his side of the story.

*Id*. at 26.   The *Robinson* Court understandably held that the prosecutor's comments were a

proper response to defense counsel's comments.   By contrast, Dora's counsel never stated

18

or implied that Dora was not allowed to tell his side of the story. Thus, Robinson is easily distinguishable.

¶32. The prosecutor in this case clearly violated Dora's Fifth Amendment rights. I would enforce the constitutional prohibition, reverse, and remand for a new trial.

**WALLER AND DIAZ, P.JJ., AND GRAVES, J., JOIN THIS OPINION**.