# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-KA-00475-COA

JOSEPH KEYS A/K/A JOSEPH BENJAMIN           APPELLANT
KEYS A/K/A SKEET KEYS A/K/A JOSEPH B.
KEYS

v.

STATE OF MISSISSIPPI                                        APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 02/22/2013 |
| TRIAL JUDGE: | HON. EDDIE H. BOWEN |
| COURT FROM WHICH APPEALED: | COVINGTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: W. DANIEL HINCHCLIFF |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LISA L. BLOUNT |
| DISTRICT ATTORNEY: | DANIEL CHRISTOPHER JONES |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF SEXUAL BATTERY AND SENTENCED AS A HABITUAL OFFENDER TO LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT ELIGIBILITY FOR PAROLE, PROBATION, OR EARLY RELEASE |
| DISPOSITION: | AFFIRMED: 04/21/2015 |
| MOTION FOR REHEARING FILED: | 5/01/2015: DENIED; AFFIRMED: 09/20/2016 |
| MANDATE ISSUED: | |

**EN BANC.**

**GRIFFIS, P.J., FOR THE COURT:**

## MODIFIED OPINION ON MOTION FOR REHEARING

¶1.     The motion for rehearing is denied. The previous per curiam affirmance of this Court

is withdrawn, and this opinion is substituted in its place.

¶2. Joseph Keys was convicted, in the Covington County Circuit Court, of sexual battery, and sentenced as a habitual offender to life in the custody of the Mississippi Department of Corrections. Keys perfected an appeal, which was assigned to this Court. In a brief prepared by the Mississippi Office of State Public Defender, Indigent Appeals Division, Keys raises two issues: (1) whether the circuit court erred in both not allowing impeachment evidence of Zyesha McGill's testimony, as well as not allowing the introduction of evidence showing that the victim lived with a convicted sex offender, and (2) whether the circuit court committed reversible error in submitting the issue of life imprisonment to the jury. Additionally, Keys filed a pro se brief asserting three additional issues: (3) whether he was denied a speedy trial, (4) whether newly discovered evidence entitles him to a new trial, and (5) whether he was denied effective assistance of counsel. Finding no error, we affirm.

**FACTS**

¶3. Keys was indicted for the sexual battery of his cousin, Jane Doe.[1] Keys was approximately fifty years old at the time of the crime, and Jane was eleven years old at that time. Jane was twelve years old at the time of the trial. Prior to trial, the prosecution moved to sentence Keys under Mississippi Code Annotated section 99-19-81 (Rev. 2007).

¶4. Jane testified that when she was ten years old, Keys began touching her inappropriately, showing her his penis, and on one occasion "some white stuff" came out of his penis onto her leg. Jane also testified Keys had tried to put his penis inside her. Jane additionally testified Keys licked her genital area and inserted his finger into her vagina on

---

[1] The minor's name has been changed to protect her privacy.

more than one occasion. When she objected to his actions, he would hit her. She also said she was afraid of him because he was bigger than her.

¶5. The indictment only referenced one count of sexual battery, which occurred on May 1, 2011. A family barbecue occurred on that day. Jane testified Keys telephoned her mother and asked for Jane to come to an aunt's house where he had something to give to her. Jane's mother told her to go there, and Jane complied, even though she was afraid. Jane said that at the aunt's house, Keys held her down, pulled down her pants, and licked her genital area. When a relative drove up to the house, Jane ran out the door.

¶6. On direct examination, Jane admitted that after her cousins, who were around her own age, learned of Keys's sexual attacks, they picked on her and teased her. Because she was embarrassed, she falsely told one cousin Keys had not done anything to her. She said she lied because she wanted to stop the teasing. Two of Jane's cousins testified Jane told them Keys had not done anything to her. However, one of them admitted Jane was being teased about Keys prior to her denial, and the other said Jane later said Keys had molested her.

¶7. Jane said the first person she told of Keys's actions was Zyesha McGill. McGill's testimony not only supported Jane's accusations against Keys, but McGill also testified to admissions made by Keys. McGill's testimony will be more fully discussed later in this opinion, because in Keys's first issue he contends the circuit court erred in not allowing him to introduce another witness's testimony to impeach McGill's testimony.

¶8. Dr. Derrick Duffield was an emergency-room physician who examined Jane on June 20, 2011, some fifty days after the battery. He noted an irritation on the genital area that was

3

not normal, and stated Jane's behavior was consistent with that of a victim of sexual assault.

¶9.     Cheryl Caldwell was a forensic interviewer with the Child Abuse Prevention Center in Hattiesburg, Mississippi. She stated Jane's behavior was similar to sexual-assault victims, and she did not think Jane fabricated her account.

¶10.    Keys testified in his own defense. He denied all allegations, and said he had never been alone with Jane, although he had babysat her and her brother and sister. He said he knew who McGill was, but he never had any conversations with her. He speculated that Jane fabricated her story because she and her mother blamed him for Jane's father being in jail for a crime unrelated to this case.

## DISCUSSION

### I.      Impeachment Evidence

¶11.    Keys contends the circuit court erred both when it prohibited him from impeaching McGill's testimony and when it prohibited him from introducing evidence that Jane lived with a convicted sex offender. "A trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence. Unless the judge abuses this discretion so as to be prejudicial to the accused, the court will not reverse this ruling." *Corrothers v. State*, 148 So. 3d 278, 310 (¶76) (Miss. 2014). Further, limitations on cross-examination are also reviewed under an abuse-of- discretion standard. *Anthony v. State*, 108 So. 3d 394, 397 (¶5) (Miss. 2013).

¶12.    McGill testified she knew both Jane and Keys because the father of her child was related to both of them. McGill said that before Jane ever told her of the abuse, she and Keys

4

were discussing her own relationship difficulties, and Keys said: "[Y]ou can't help who you love." According to McGill, Keys further said no one would approve, but he was in love with his cousin. Later, after thinking of what Keys had said, McGill came to suspect Keys was referring to Jane, because McGill recalled Jane would become withdrawn when Keys was around her, and Jane seemed to try to avoid him.

¶13. On June 19, 2011, Jane was at McGill's house. McGill asked Jane if Keys had behaved inappropriately. Jane then told her of the abuse in detail. That same day, while Jane was still there, Keys came by McGill's house, and he was looking for Jane. McGill testified Keys told Jane that McGill knew of the abuse, and she was going to allow it to continue. McGill differed, and said she would not let Keys touch Jane. But McGill did urge Jane to speak with Keys. McGill said she did this to get "more evidence." McGill testified Keys told Jane: "[Y]ou liked the way I touched you down there. How are you going to change it up now?"

¶14. During cross-examination of McGill, the following exchange took place:

Q.  Do you recall ever saying that this really didn't – did you ever make a statement to anybody, after this incident, that it wasn't true at all?

A.  I never said that.

Q.  You never once said that?

A.  I never said that.

Q.  Okay. Not to anybody?

A.  No, to anybody, because I didn't talk to nobody, why would I talk to a family that is harassing me about a situation when it deals with a child? When it deals with a child being touched, I wasn't talking to them. The

5

> only person I was talking to, conver[sing] with was [Jane,] on Keys Hill to be exact. And I would come and speak to people. But as far as holding a conversation, it was with [Jane.]

However, Keys failed to ask McGill specifically about a statement she may have made to Irene Taylor, which Keys contends would have indicated that McGill fabricated her testimony.

¶15. During the defense's case-in-chief, Taylor was called as a witness. When asked whether she recalled McGill calling her during August 2011, the prosecution objected on the grounds that the question called for hearsay, and further that it was inadmissible for impeachment purposes, because Mississippi Rule of Evidence 613(b) requires that in order to impeach a witness's testimony, the witness must be "afforded an opportunity to explain or deny" the statement. The circuit judge ruled Taylor's testimony was inadmissible unless McGill was afforded an opportunity to explain any statement she made to Taylor. Unfortunately for the defense, at the time Taylor's testimony was not allowed, McGill had been finally excused because she was pregnant and had gone into labor, and needed medical treatment. Initially after McGill's testimony, the defense asked that McGill not be finally excused because she might need to be re-called. McGill remained in the courthouse while other witnesses were called. However, when McGill went into labor, the prosecution asked that she be finally excused to obtain medical treatment, and the defense agreed to her being finally excused.

¶16. After Taylor's testimony had not been allowed, the trial recessed for the evening, but the defense was unable to locate McGill before trial recommenced. The following morning,

the circuit judge stated that the Covington County Sheriff was going to look for McGill, and the circuit judge ruled that if McGill could be found and brought back to court to be asked specifically about the phone conversation with Taylor, then the impeachment would be allowed. But McGill did not return to trial, and no proffer of Taylor's testimony was made for the record.

¶17.    On appeal, Keys contends that a proper predicate had been laid with the general question of whether McGill ever said something to the effect that Keys was not guilty, and that the circuit judge erred in not allowing the impeachment. Under similar facts, this Court found that unless the witness to be impeached is confronted with the "specific statement," then impeachment cannot be allowed. *Al-Fatah v. State*, 916 So. 2d 584, 592 (¶25) (Miss. Ct. App. 2005); *see also Ladd v. State*, 969 So. 2d 141, 146 (¶23) (Miss. Ct. App. 2007). The circuit judge correctly found the defense failed to lay a proper predicate. Furthermore, rather than showing any abuse of discretion, the record shows the circuit judge gave the defense every opportunity available to present Taylor's testimony concerning any phone call from McGill.[2] This issue is without merit.

¶18.    Additionally, Keys contends the circuit judge erred in not allowing introduction of evidence showing that Jane lived with a convicted sex offender. Approximately two weeks prior to trial, the prosecution filed a motion in limine to prevent Keys from introducing any evidence concerning the victim's prior sexual activities. On the morning of the first day of

---

[2] The prosecution also objected to Taylor's testimony because of a possible discovery violation, but the circuit judge was disinclined to prohibit Taylor's testimony if there was any way to cure any impediment to her being called.

trial, the defense produced uncertified copies of some document that may have shown Jane's grandfather, with whom she was living, was registered as a sex offender in another state. There were no details of why the grandfather may have been on the registry. The prosecution then brought up its motion in limine, and also argued that the defense failed to provide notice fifteen days prior to trial that it intended to submit evidence of Jane's prior sexual behavior, as required by Mississippi Rule of Evidence 412(c)(1). The circuit judge asked Keys's counsel if he had any knowledge that the grandfather may have been the perpetrator, and Keys's counsel said he did not. The circuit judge found not only that the potential for prejudice outweighed any probative effect, but also that there was no probative effect, and the status of the grandfather was simply not relevant. Again, a circuit court will not be overturned on an evidentiary issue absent an abuse of discretion. *Corrothers*, 148 So. 3d at 310 (¶76). Nothing in the record shows an abuse of discretion. This issue is without merit.

## II. Erroneous Jury Instruction

¶19. Jury Instruction S-8 informed the jury of three possible verdicts that it could reach: (1) guilty of sexual battery and "fix the penalty at life imprisonment," (2) guilty of sexual battery and "cannot agree to fix the penalty at life imprisonment," and (3) not guilty. The jury returned the verdict of guilty with life imprisonment. However, Mississippi Code Annotated section 97-3-101(3) (Rev. 2014) provides that the circuit court shall set the term of imprisonment, with a maximum sentence of life imprisonment, or a lesser term not to be less than twenty years. And in this case, the prosecution moved prior to trial to sentence Keys as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev. 2007).

8

Consequently, not only was it for the circuit judge to set the term of imprisonment, the circuit judge had no discretion in the matter, and a life sentence without parole was mandatory if Keys was convicted. Nevertheless, the instruction was erroneous, and the State confesses error.

¶20. Errors in jury instructions are subject to harmless-error analysis. *Conley v. State*, 790 So. 2d 773, 793 (¶72) (Miss. 2001); *see also Harrell v. State*, 134 So. 3d 266, 274 (¶30) (Miss. 2014) (harmless error not appropriate when jury instruction omits essential element of crime charged). In this case, the error had absolutely no effect on the sentence itself. Further, the jury was properly instructed that its duty was to judge the credibility of the witnesses. The defense contends that the instruction's reference to a possible life sentence may have inflamed the passions on the jury by highlighting the seriousness of the crime. But what the jury's affixing a life sentence really showed is that it disbelieved Keys's testimony, and given Jane's testimony of repeated sexual assaults by an adult relative some forty years her senior, the jury was disinclined to offer what mercy it had erroneously been instructed was its to give. The error was harmless. This issue is without merit.

### III. Speedy Trial

¶21. Keys failed to raise a speedy-trial issue either at trial or in his motion for a new trial, and the issue was first raised in his pro se appellate brief. The failure to raise a constitutional speedy-trial claim at trial limits appellate review to a plain-error analysis. Review is limited to whether a fundamental right was impacted, and if so, whether a miscarriage of justice occurred. *Dora v. State*, 986 So. 2d 917, 925 (¶19) (Miss. 2008). "Absent the plain-error

9

criteria being satisfied unequivocally, appellate courts are loath to address issues not presented to the trial court." *Id*. To raise a successful plain-error challenge that an appellant's constitutional right to a speedy trial was violated, it is incumbent upon an appellant to point to specific prejudice that arose and created a miscarriage of justice. *Havard v. State*, 94 So. 3d 229, 237 (¶22) (Miss. 2012); *Patterson v. State*, 79 So. 3d 549, 550 (¶9) (Miss. Ct. App. 2011).

¶22. Eighteen months elapsed between Keys's arrest and trial. Keys was originally arrested on June 23, 2011, and trial commenced on January 22, 2013. In *Dora*, over three years elapsed between Dora's arrest and trial, yet no prejudice was found from the mere lapse of time. *Dora*, 986 So. 2d at 925 (¶¶19-22). Thus, delay itself does not show prejudice. Keys contends he was prejudiced when the prosecution asked that McGill be finally excused as a witness when she began experiencing labor pains, and Keys contends that had he been brought to trial earlier, McGill would not have been pregnant. However, Keys is mistaken as to what prevented his attorney from being able to lay a proper predicate for impeaching testimony. It was not because McGill was pregnant; rather, it was because his attorney agreed to finally excuse her as a witness. Keys fails to show any prejudice stemming from the delay in bringing him to trial. This issue is without merit.

### IV. Newly Discovered Evidence

¶23. Keys attached copies to his pro se brief of purported text messages between Jane and another person, in which Jane may have admitted her testimony against Keys was fabricated. However, these texts are not in the record, and they were not presented in the circuit court

10

either at trial or in the motion for a new trial. Evidence that is discovered after trial must still be presented to the trial court in a motion for a new trial for the issue to be raised on direct appeal. *Melton v. State*, 723 So . 2d 1156, 1159 (¶14) (Miss. 1998). Nevertheless, newly discovered evidence may be a ground for post-conviction relief. Miss. Code Ann. § 99-39-5(1)(e) (Rev. 2007). Therefore, we dismiss this issue without prejudice.

## V.    Effective Assistance of Counsel

¶24.    Ineffective-assistance-of-counsel claims are rarely addressed on direct appeal, because an appellate court is limited to what is in the record presented to the trial court, and conversely, post-conviction-relief proceedings allow a defendant to present information expanding upon the record. *McClendon v. State*, 152 So. 3d 1189, 1191 (¶12) (Miss Ct. App. 2014). An ineffective-assistance-of-counsel claim is only addressed on direct appeal if the record affirmatively shows there was ineffectiveness, or if the parties stipulate the record is sufficient to address the claim. *Aguilar v. State*, 847 So. 2d 871, 878 (¶17) (Miss. Ct. App. 2002). The record does not show counsel's performance was constitutionally deficient, nor have the parties stipulated. Therefore, we dismiss this issue without prejudice.

¶25.    **THE MOTION FOR REHEARING IS DENIED.  THE PREVIOUS PER CURIAM AFFIRMANCE OF THE COURT IS WITHDRAWN, AND THIS OPINION IS SUBSTITUTED.    THE JUDGMENT OF THE CIRCUIT COURT OF COVINGTON COUNTY OF CONVICTION OF SEXUAL BATTERY AND SENTENCE AS A HABITUAL OFFENDER OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE IS AFFIRMED.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO COVINGTON COUNTY.**

**LEE, C.J., IRVING, P.J., BARNES, ISHEE, CARLTON AND FAIR, JJ., CONCUR.  JAMES, WILSON AND GREENLEE, JJ., NOT PARTICIPATING.**